836 So.2d 609 (2002)
STATE of Louisiana
v.
Elbert JORDAN.
No. 02-KA-820.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*610 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Lisa B. Schneider, Walter G. Amstutz, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Elbert Jordan, appeals his conviction and sentence on a charge of distribution of cocaine within 1000 feet of the Frank Lemon Playground in violation of LSA-R.S. 40:981.3. For reasons that follow, we affirm.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Elbert Jordan, with distributing cocaine within 1,000 feet of the Frank Lemon Playground in violation of LSA-R.S. 40:981.3. Defendant was arraigned and pled not guilty. The defendant filed a motion to quash the bill of information, which the trial judge denied.
On November 29, 2001, the case was tried before a 12-person jury, which found the defendant guilty as charged. Defendant made an oral motion for new trial, which was denied on December 10, 2001. Defendant waived sentencing delays and was sentenced to imprisonment at hard labor for 15 years without benefit of parole, probation or suspension of sentence. After sentencing, defendant made an oral motion for appeal.

FACTS
On August 23, 2000, Agent Megan Carter, a narcotics officer with the Jefferson Parish Sheriff's Office, was driving an unmarked car on Montford Street near Frank Lemon Playground. A black female approached the car, and Agent Carter asked if she "could get two 20s," which Agent Carter explained was two $20 rocks of crack cocaine. The black female replied, "Yes. Make the block." Before Agent Carter left to drive around the block, however, a black male, later identified as the defendant, asked Agent Carter what she wanted. When Agent Carter said that she wanted two 20s, the defendant walked away from the car. The defendant then gave the female two rocks of crack cocaine, which she handed to Agent Carter in exchange for $40 in cash. According to Agent Carter, the drug transaction took place approximately 250 feet from the Frank Lemon Playground. This entire transaction was captured by the videotape recorder in Agent Carter's unmarked car. The State played this videotape for the jury at trial.
The substance was field tested and found to be cocaine. The State and the defendant stipulated that, if the forensic chemist were called, he would testify that the laboratory tests on the rocks confirmed the presence of cocaine, and that he prepared a report to that effect. The court accepted the lab report into evidence without objection from the defendant. The defense rested without presenting any evidence.
In brief to this court, defendant assigns one error. The defendant contends that the trial judge improperly denied his motion to quash and motion for new trial *611 because the State failed to establish that the playground was school property as defined by LSA-R.S. 40:981.3(C)(2). The State responds that the defendant's argument is not properly before this Court because the defendant did not urge this claim in either the motion to quash, or the new trial motion.
As pointed out by the State in its brief, the ground now asserted by the defendant was never raised in the trial court. The defendant's motion to quash asserted that Jefferson Parish had not complied with its duties prescribed in LSA-R.S. 17:405, that the application of LSA-R.S. 40:981.1 was unconstitutionally vague and overbroad, and that the statute, as applied, unconstitutionally discriminated against "African-Americans and /or person [sic] of low economic status." At the hearing, the defendant only argued one of these grounds, namely that Jefferson Parish failed to comply with its duty in LSA-R.S. 17:405 regarding posting the area as a drug-free zone.[1] The trial judge denied the defendant's motion on the basis that the charged offense, LSA-R.S. 40:981.3, did not impose a duty upon the Parish to post "drug free zone" signs on school property.[2]
Before sentencing, the defendant made an oral motion for new trial on the basis that the defendant was convicted under an unconstitutionally broad statute and that the statute violated the defendant's right to due process. After hearing argument from the State and defense, the court denied the motion.
LSA-C.Cr.P. art. 536 requires a motion to quash to be in writing and to specify the grounds upon which it is based. It is well established in our law that a new basis for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Cressy, 440 So.2d 141 (La. 1983); State v. Bacuzzi, 97-573, (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1069. Further, in State v. Pelas, 99-0150, (La.App. 1 Cir. 11/5/99) 745 So.2d 1215, 1217, the court held that the defendant was precluded from raising a new basis for his motion to quash on appeal.
Pursuant to LSA-C.Cr.P. art. 851, the motion for new trial is based upon the supposition that an injustice has been done *612 to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. LSA-C.Cr.P. art. 852 provides that a motion for new trial shall be in writing, and shall state the grounds upon which it is based.
On appeal, the defendant does not challenge either the rulings on the motion for new trial or the motion to quash on any of the grounds raised in the trial court. Rather, for the first time on appeal, the defendant raises a new basis for his motion to quash and new trial motion. Further, defendant's motion for new trial was oral and most importantly, did not contest the sufficiency of the evidence.
Nevertheless, although the defendant does not clearly articulate the argument in his brief, we find a close reading of the assignment indicates that the defendant's chief complaint is that evidence presented at trial is insufficient to support his conviction because the State failed to establish that the Frank Lemon Playground is within the definition of school property.
In State v. Manson, 01-159 (La. App. 5 Cir. 6/27/01), 791 So.2d 749, 760, this Court stated that "[t]he courts have long recognized a defendant's right to appellate review for sufficiency of the evidence, even in the absence of a written motion for new trial or for post verdict judgment of acquittal." See, State v. Washington, 421 So.2d 887, 889 (La. 1982). Thus, the substance of the defendant's claim is properly before this Court.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tilley, 99-0569, (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).
LSA-R.S. 40:981.3(A)(1) prohibits certain violations of the Uniform Controlled Dangerous Substances Law on school property as follows:
(1) Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.
C. For purposes of this Section:
(1) "School" means any public or private elementary, secondary, vocational-technical school, or any public or private college or university in Louisiana.
(2) "School property" means all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks.
Defendant asserts that the State failed to meet its burden of proof because there was no evidence to establish that the Frank Lemon Playground was "owned by the State or by a political subdivision and used or operated as a playground or recreational facility." However, we find that the record reflects otherwise. At trial the prosecutor showed Agent Carter aerial photographs depicting the vicinity of the Frank Lemon Playground. On one of the photographs, Agent Carter pointed out the "gym area" and the "kiddy playground." Agent Carter also identified the location *613 where the drug transaction occurred. On cross-examination, Agent Carter described the drug-free sign that was posted on the side of the gym:
It says, "Drug-free zone." It has a red circle with a slash on it, and it's going to have the L.R.S.... The L.R.S. [40] 981.3 for the school zone charge ... And, I believe it has what the statute you know, within 1,000 feet.
This testimony by Agent Carter was uncontested. Agent Carter's specific, uncontroverted testimony regarding the sign placed on the side of the gym at the Frank Lemon Playground provides sufficient evidence for a rational trier of fact to conclude that the playground met the statutory definition of school property as defined by LSA-R.S. 40:981.3(C)(2). See; State v. Bannister, 95-172 (La.App. 5 Cir. 6/28/95), 658 So.2d 16. Viewing the evidence in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find the defendant guilty as charged.
Review of the record for errors patent according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), shows that the trial court imposed an illegally lenient sentence by failing to impose the mandatory fine. When defendant committed the instant offense, LSA-R.S. 40:981.3(E)(1) provided that a first time violator of this statute "shall be punished by the imposition of the maximum fine ... authorized by the applicable provisions of R.S. 40:966 through R.S. 40:970...." The maximum fine for distributing cocaine is $50,000. LSA-R.S. 40:967(4)(b). The current statute provides the same sentencing as to fines.[3]
LSA-C.Cr.P. art. 882(A) provides that "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, provides that an appellate court may recognize and correct an illegally lenient sentence under the authority of LSA-R.S. 15:301.1(A) and LSA-C.Cr.P. 882 as follows:
In the present case, the authority of the appellate court to recognize sentencing error arises in part from the self-activating provisions of LA.REV.STAT. ANN. § 15:301.1(A) (i.e., the failure to impose sentence without benefit of parole, probation, or suspension of sentence) and under the general provisions of LA. CODE CRIM. PROC. ANN. art. 882 (the sentencing errors other than those which fall under LA.REV.STAT. ANN. § 15:301.1(A)). Under the provisions of article 882, "[a]n illegal sentence may be corrected at any time by ... an appellate court on review." ... Accordingly, the appellate court on its own properly noticed the numerous sentencing errors in the punishment that the sentencing court imposed without the need to concern itself with the time limitations of Paragraph B.
More specifically, the Williams court addressed the issue of the authority and appropriateness of correction of an illegally lenient sentence in that the trial court failed to impose a mandatory fine of $2000.00. In Williams neither the sentencing court nor the district attorney sought to amend the sentence. The appellate *614 court has the authority under LSA-C.Cr.P. art. 882 to recognize and to correct the sentence "at any time." Williams, supra, 800 So.2d at 802. We note, however, that the language of article 882 is permissive rather than mandatory. In this case we will not correct the illegally lenient sentence.
AFFIRMED.
NOTES
[1] LSA-R.S. 17:405 provides in pertinent part:

B. The local governing authority which has jurisdiction over zoning matters in which each drug free zone is located shall publish a map clearly indicating the boundaries of each drug free zone in accordance with the specifications in Subsection A. The drug free zone map shall be made an official public document and placed with the clerk of court for the parish or parishes in which the drug free zone is located.
C. (1) The state superintendent of education, with the approval of the State Board of Elementary and Secondary Education, and the commissioner of higher education, with the approval of the Board of Regents, shall develop a method by which to mark drug free zones, including the use of signs or other markings suitable to the situation. Signs or other markings shall be located in a visible manner on or near each school and on and in each school bus indicating that such area is a drug free zone, that such zone extends to one thousand feet of school property, and that a felony violation of the Uniform Controlled Dangerous Substances Law will subject the offender to severe penalties under law. The State Department of Education shall assist each school system with providing for the posting required in this Subsection.
[2] It is noted that State v. Williams, 01-2009, (La.App. 1 Cir. 6/21/02), 822 So.2d 780, 785-786, recognized that compliance with LSA-R.S. 17:405(B) is not required in order to establish a violation of LSA-R.S. 40:981.3. Williams held that the trial judge properly denied defendant's motion to quash made on the basis that the maps showing the locations and boundaries of drug free zones had not been published pursuant to LSA-R.S. 17:405(B).
[3] It is noted that the penalty provision for LSA-R.S. 40:967 has been amended since defendant committed the instant offense to reduce the minimum term of imprisonment from five years to two years. LSA-R.S. 40:981.3 has also been amended to eliminate the minimum term of imprisonment. See 2001 La. Acts 403, § 4, effective June 15, 2001.