887 So.2d 565 (2004)
STATE of Louisiana
v.
Ronald F. KIBBE.
No. 04-KA-349.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*566 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Laura M. Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant, Ronald F. Kibbe, appeals his conviction for violation of LSA-R.S. 14:67, theft of U.S. currency valued at $500. For the following reasons, defendant's conviction is affirmed and we remand to the trial court to correct errors patent on the face of the record.

FACTS AND PROCEDURAL HISTORY
On May 9, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Ronald F. Kibbe, with theft of U.S. currency valued at $500 in violation of LSA-R.S. 14:67. Kibbe was arraigned on May 19, 2003 and pled not guilty. On January 8, 2004, the case was tried before a six-person jury which found Kibbe guilty as charged. The trial court denied Kibbe's motion for new trial on January 23, 2004, and on that same date, Kibbe waived sentencing delays. The trial court sentenced Kibbe to imprisonment in the parish prison for six months suspended and placed him on "in-house court probation" for six months.[1] Kibbe thereafter filed a motion for appeal that was granted.
John E. Yaeger, II, director of security for Boomtown Casino, testified that, on March 27, 2003, he became aware that the casino was missing $500. In an attempt to recover the money, he viewed a videotape of the area at the time the money was lost. Mr. Yaeger observed "one of our female slot key people get some money from the cage." As she turned around to walk away, she dropped some money on the floor.
Mr. Yaeger noticed a white male, later identified as defendant, pick up the money, look around to see if anybody saw him, stay around a short while to see if anybody came back, then turn and go to the cage. After Mr. Yaeger looked at the videotape, he was able to ascertain the man's identity as that of Ronald Kibbe. Once he had the name, Mr. Yaeger checked to see if the casino had an address or telephone number for him through their "Player's Club" Department.
*567 Mr. Yaeger learned that Kibbe had a residence on Robert E. Lee Boulevard in New Orleans and obtained his telephone number. Mr. Yaeger called that number on several different occasions, but nobody answered the telephone. On the third or fourth try, a female answered the telephone. Mr. Yaeger advised who he was and asked if Kibbe was there. The female stated that he was not, and that sometimes he stayed at another residence. Mr. Yaeger asked for another telephone number, but the female would not provide one.
He subsequently advised the female that he was director of security for Boomtown Casino, that they had Kibbe on videotape finding some money, and that he would like Kibbe to call him so they could discuss the return of the money. The female told Mr. Yaeger that she would give him the message. Mr. Yaeger testified that, at that time, Boomtown just wanted their money back, and they wanted to do it the "easy way" and not embarrass anyone.
However, when Mr. Yaeger did not receive a call from Kibbe, he contacted the state and asked them to file charges. After charges were filed, Kibbe called Mr. Yaeger and asked him if they could "work it out." Mr. Yaeger advised Kibbe that they had already contacted the district attorney's office.
Louisiana State Trooper Saunders Craine testified that he was assigned to investigate the theft at Boomtown Casino. After obtaining the videotape and statements from the casino, he conducted a criminal background check on Kibbe, obtained a driver's license photograph, and learned that defendant was living at 630 Central Avenue, Apartment 112. Trooper Craine then prepared an arrest warrant for Kibbe.
On April 3 at 6:10 p.m., Trooper Craine went to the Central Avenue address. He asked Kibbe to step outside and arrested him. Trooper Craine subsequently handcuffed Kibbe, and another officer advised defendant of his rights which defendant indicated that he understood. Trooper Craine testified that when they brought Kibbe back into his house so he could put on his shoes, Kibbe said, "[I]s this about the Five Hundred Dollars?", and "that girl dropped that Five Hundred Dollars." When Trooper Craine asked Kibbe where the $500 was, defendant said he used it to pay back rent. The videotape was subsequently played for the jury.
In the videotape dated March 27, 2003 at approximately 2:50 a.m., a cashier behind a counter and glass counts money and hands it to a white female. The white female counts the money again. As she does so, a white male walks up and stands a few feet behind her. The white female turns to her right and walks away with the money in her hands. As she walks away, she drops some of the money on the floor and continues walking. The white male looks down, sees the money, and picks it up. He turns to his right, leans on the counter, and looks all around. The videotape shows an older woman standing at the counter a couple of feet down from the white male on his right conducting a transaction with another cashier. The white male turns back to the cashier where he conducts some type of transaction. He takes something from the cashier, looks to his right and around. He turns back to the cashier, but then turns around to look behind him and around again. The white male turns back to the cashier, takes something, and walks off. The videotape shows the white male leaving the casino immediately after.
Kibbe testified that he did not steal any money from anybody at the Boomtown Casino on March 27, 2003. He identified himself on the videotape as it was being played again for the jury. He testified *568 that, as he was waiting at the cashier's window to cash his nine dollar check, a woman passed him quickly. All of a sudden he looked down, saw the money on the floor, reached down and picked it up.
Kibbe looked around to see who might have dropped it. He claimed that he did not see anyone drop the money. He explained that he saw a woman standing to his right, so he approached her and asked if that was her money. The woman did not acknowledge him or say anything to him. Kibbe went back to the cashier's window and gave the cashier his ticket. He observed her staring off into space, so he looked around to see what she was staring at. The cashier gave him his ticket which he signed, and then he left the casino.
The next day, Kibbe's wife told him that somebody had called and wanted to talk to him regarding an incident that had happened the day before. Kibbe testified that the person who called did not identify himself as a Boomtown employee, nor did he mention any money. Kibbe claimed that he called the telephone number the person gave and left a message. He explained that if somebody had called back, his wife probably would not have answered the telephone because she was on oxygen and stayed in another bedroom, and that he was working the remainder of the week until 10:30 p.m. at Sams.
At a later date, two people banged on his door. He answered it and walked outside, and the officers told him they were there regarding the incident at Boomtown Casino. They arrested him, handcuffed him, and a third officer advised him of his rights. Defendant asked them, "Is this about the money I found at the Casino?" He claimed that he did not mention that a girl had dropped the money. He admitted that he told the officer that he used the money to pay back rent.
Kibbe testified that, after he was arrested, his wife called Mr. Yaeger and offered to obtain $500 and pay it back, but that Mr. Yaeger was very rude and said, "No, it's too late for that" and hung up on her. Kibbe explained that he had resided on Central Avenue for approximately five years, and that his mother lived on Robert E. Lee Boulevard at the time of the incident. Kibbe testified that his mother had not had a telephone in over fifteen years.

LAW AND ARGUMENT
In his first assignment of error, Kibbe argues that the evidence was legally insufficient to support the verdict. He does not argue that the state failed to prove the value of the misappropriation or taking necessary to support his conviction. Rather, he contends that he lacked the specific intent to commit the crime because of a mistake of fact, primarily that he believed the cash was lost or abandoned by unknown persons. The state responds that the evidence was sufficient to support the conviction.
In determining a challenge to the sufficiency of the evidence, the reviewing court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt.[2]
In cases involving circumstantial evidence, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable *569 hypothesis of innocence." In State v. Mitchell,[3] the Louisiana Supreme Court discussed appellate review of such cases:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.... (Citations omitted; emphasis as found in the original).
In the instant case, defendant was charged with and convicted of theft of U.S. currency valued at $500.00. Theft is defined in LSA-R.S. 14:67(A) as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Theft is a crime of specific intent.[4] Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[5] Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is a legal conclusion to be resolved by the fact finder.[6]
Kibbe's argument is that he could not have specifically intended to commit the crime of theft because of a mistake of fact-he believed the money was lost or abandoned. LSA-R.S. 14:16 states:
Unless there is a provision to the contrary in the definition of a crime, reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime.
Reasonable ignorance can be a defense under LSA-R.S. 14:16, but not "unreasonable ignorance."[7]
In the instant case, the state introduced evidence to show that Kibbe committed theft of $500. Kibbe argued that he did not steal the money, but in fact, thought that the cash was lost or abandoned. He further claimed that he did not see the woman drop the money before he picked it up.
The jury rejected the defendant's argument at trial. A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses.[8] A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure that the defendant has received due process of law.[9] It *570 is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson.[10]
Mr. Yaeger's testimony and the surveillance videotape indicate that Kibbe observed a female drop some money after leaving the cashier's window, and that he picked the money up, looked around several times, and then left the casino. Although Kibbe denied observing the female drop the money, his testimony was contradicted by the videotape which shows that he did in fact observe her drop the money. His testimony was also contradicted by Trooper Craine who testified that, when defendant was arrested, he stated, "[I]s this about the Five Hundred Dollars?; that girl dropped that Five Hundred Dollars." As such, the evidence shows that Kibbe had the specific intent to commit the crime, and that he did not mistakenly believe that the money was lost or abandoned.
Accordingly, after a review of the evidence presented at trial viewed in a light most favorable to the state, we find that a reasonable juror could have excluded the hypothesis that defendant mistakenly believed the money was lost or abandoned.
As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[11] and State v. Weiland.[12] The following matters are noted:
The trial court imposed an illegally lenient sentence. It placed defendant on probation for six months in violation of LSA-C.Cr.P. art. 893(A) which states that the period of probation shall not be less than one year nor more than five years.
This Court has authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal.[13] Nonetheless, this Court has also recognized that LSA-C.Cr.P. art. 882 is permissive.[14] Accordingly, we remand the case to the trial court for resentencing in accordance with LSA-C.Cr.P. art. 893(A).
The transcript indicates that the trial judge did not advise Kibbe of the two-year prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. The commitment indicates that defendant was advised of this prescriptive period. Where there is a discrepancy between the commitment and the transcript, the transcript prevails.[15] We therefore remand the case with an order for the trial judge to send written notice to defendant of the prescriptive period for filing an application for post-conviction relief, along with a notice of when the period begins to run, within ten days of the rendering of this opinion, then to file written proof in the record that defendant received the notice.[16]
*571 We also note that the commitment is inconsistent with the transcript and the probation form regarding restitution. The transcript indicates that the trial judge ordered defendant to pay restitution; however, the trial judge did not state the amount of restitution to be paid. The "Conditions of Probation  Felony" form provides that defendant is to pay restitution in the amount of $500, and the form is signed by defendant, his attorney, and the trial judge. The commitment states that, "The Defendant shall pay any restitution to the victim to be determined by probation." As stated above, where there is a discrepancy between the transcript and the minute entry, the transcript prevails.[17] Therefore, we order the trial court to correct the original commitment to insure an accurate record. [18]
For the foregoing reasons the defendant's conviction is affirmed and we further remand to the trial court in order to correct errors patent on the face of the record.
AFFIRMED; REMANDED.
NOTES
[1] "In-house court probation" appears to be unsupervised probation. In addition to all general conditions of probation, the trial court imposed the following special conditions of probation: a $300 fine, all court costs, and restitution of $500.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82.
[3] 772 So.2d at 83.
[4] State v. Hampton, 00-1002 (La.App. 5 Cir. 1/23/01), 782 So.2d 1045, 1052.
[5] LSA-R.S. 14:10(1); State v. Mitchell, 772 So.2d at 82.
[6] State v. Graham, 420 So.2d 1126 (La.1982).
[7] State v. Henderson, 296 So.2d 805, 807 (La.1974).
[8] State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35.
[9] State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789).
[10] State v. Rosiere, 488 So.2d 965, 968 (La.1986) (and the cases cited therein).
[11] 312 So.2d 337 (La.1975);
[12] 556 So.2d 175 (La.App. 5 Cir.1990).
[13] State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.
[14] State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609.
[15] State v. Lynch, 441 So.2d 732, 734 (La.1983).
[16] State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writs denied, 03-0200 (La.10/10/03), 855 So.2d 326, and 03-0503 (La.10/10/03), 855 So.2d 329.
[17] State v. Lynch, 441 So.2d 732, 734 (La.1983).
[18] State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90-91.