CLARENCE E. McMANUS, Judge.
 

 | ¡(Defendant, Norbert Joseph, III, was convicted of theft of property having a value of $500.00 or more, and was sentenced to five years imprisonment, at hard labor. The trial court suspended three years of defendant’s sentence and ordered him to serve two years on home incarceration. The court explained that when he completed the home incarceration program he would be on probation for an additional three years. Defendant was ordered to make restitution to the victims and was given two years in which to do so. This timely appeal followed.
 

 The following facts were adduced at trial. In November and December 2006, GameStop, the world’s largest specialty retailer in video games, was selling PlayStation 8 and Xbox 360 gaming consoles. Christopher M. Douglas, Sr. testified that in November of 2006 he was assistant manager of the GameStop store that was located on Veterans Memorial Boulevard, and in December of 2006, he was promoted to store manager. Mr. Douglas testified that over about a three-week period of time, PlayStation 3 and Xbox 360 gaming consoles were stolen from GameStop. He testified that the records at UPS, their store’s primary provider for shipments, reflected 30 PlayStation 3 consoles were never received at |sGameStop. Mr. Douglas testified that the missing packages were shipped from Grapevine, Texas, GameS-top’s home office warehouse, through UPS.
 

 Gordon Brown, III was working as a security supervisor for UPS in November and December of 2006. He testified that after being contacted by GameStop regarding the missing items, he participated in an investigation into the missing items. Mr. Brown discovered that items were missing since November 30, 2006.
 

 Mr. Brown stated that on December 4, 2006, he was tracking the shipments coming into the area and discovered eight packages had not been delivered to Gam-eStop stores. Mr. Brown contacted the store managers and requested that they check their inventory. The managers
 
 *160
 
 checked their systems and the packages were not there. Mr. Brown went to the store to check boxes there to see if the tracking numbers matched, and they did not. Mr. Brown explained that each package has an individual tracking number, allowing UPS to know where packages are when they travel through its system and when the packages are delivered. Mr. Brown explained that the missing items not delivered to GameStop were tracked and showed that the items arrived at the Earhart facility, but then were not delivered.
 

 Mr. Brown testified that on the following day, December 5, 2006, it was discovered that additional packages containing the same type of items, PlayStation 3 consoles, were missing. Thereafter, Mr. Brown contacted their technology group to obtain a Global Positioning Satellite unit (GPS) that they could run through them system and track the movement of the package.
 

 Mr. Brown obtained an empty PlayStation box from GameStop, built in the GPS, added weights to the bottom of the box, and put the package into the UPS system and tracked it. On December 12th and on December 13th, the package was delivered to GameStop as intended. On December 14th, however, the package was E tracked to a different destination. Mr. Brown explained that the package was monitored from the time it was put into the UPS system, which was at approximately 4:00 a.m., and the GPS showed that the package left UPS and stopped at Andrews’ Sports (hereinafter referred to as Andrews’), which was about three buildings down.
 

 Knowing the package went to a destination to which it was not supposed to be delivered, Mr. Brown called 9-1-1. Two deputies were dispatched to Andrews’. Mr. Brown testified that the GPS unit was found at Andrews’, about 40 or 50 yards behind the building in the grass by the railroad tracks.
 

 Mr. Brown testified that five boxes went to Andrews’ that contained nine PlayStation 3 consoles. He testified that some Xbox 360 consoles were also included in the shipment. Mr. Brown testified that the boxes were unusual in that they contained two labels. He explained that the original labels had labels over them, with the label addressed to Andrews’ on top of the original label that was addressed to GameStop. Mr. Brown testified that they worked with the police and discovered another package that was “over-labeled” that was supposed to be delivered to Babbage’s that day. He explained that Babbage’s was an affiliate of GameStop and had several missing PlayStation 3 units.
 

 Mr. Douglas testified that GameStop does not ship gaming devices to Andrews’. Mr. Brown testified that they found the box that was tracked and shipped to the warehouse inside the facility in the back of the warehouse. He explained that the outer carton with the shipping label was found in the initial search, and the actual PlayStation box was found during the second search.
 

 Mr. Brown testified that they recovered nine PlayStation consoles and two Xbox 360 consoles on December 14, 2006 from Andrews’. PlayStation 3 boxes and a box for an Xbox console were found in the warehouse, hidden behind |fiinventory and inside of Andrews’ boxes. Usually, the PlayStations were shipped in boxes with two units, but these Andrews’ boxes held three PlayStations each.
 

 Three people were arrested as a result of the investigation: defendant, Jasel Bol-den, and Sean Weber. All three individuals worked at UPS in the Earhart facility and at Andrews’. Mr. Brown explained that defendant was an hourly sorter and
 
 *161
 
 worked in the evening, around 5:00 to 9:00 p.m. Bolden and Weber were part-time supervisors with UPS and worked in the morning, usually from 4:00 a.m. to 8:00 or 9:00 a.m.
 

 Mr. Brown stated that the GPS unit was put into a package and placed in a trailer destined for the Earhart facility at approximately 4:00 a.m. Mr. Brown testified that the test package had no problems up until the time it arrived at the Earhart facility. Mr. Brown testified that the label was covered sometime after 4:00 or 5:00 a.m. and before 8:00 or 9:00 a.m. when it left the Earhart facility. He concluded that the label was changed in the Earhart facility. He testified that at 4:00 a.m. Weber and Bolden would have been the workers at the Earhart facility, and could have put those labels on in the morning. He testified that he could assume defendant was not working at that time.
 

 Mr. Brown testified that on the morning of December 15, the owner of Andrews’ called and told them that labels were discovered on their computer that had been printed from Andrews’ system that reflected shipments to Buena Park, California, and that Andrews’ did not ship to that place. The packages were being shipped from Andrews’ to GameQuest in Buena Park, California. Mr. Brown called the security department in California and the packages, which contained three PlaySta-tions, were intercepted. Mr. Brown testified that the labels on the packages were made at Andrews’.
 

 |fiCarl Raymond Livermore, III testified that he worked at Andrews’. He explained that he was currently the warehouse manager, but that in November and December of 2006, he was a warehouse helper and defendant was his supervisor. Mr. Livermore testified that on the morning of December 14, 2006, he was working in the warehouse when a UPS driver arrived at approximately 8:30 a.m. He explained that the boxes that were delivered seemed different, both in weight and in appearance.
 

 Mr. Livermore testified that after the boxes were unloaded, defendant opened the first box and it contained a tracking device. Mr. Livermore said he saw defendant take the device out of the box, but did not know what he did with it. Mr. Liver-more testified that defendant became nervous and started telling them to hurry up and wheel the boxes to the back of the warehouse. He testified that the area in the back of the warehouse was usually used for trash, and it was unusual for him to take boxes out back by the trash at that time of the morning when they would always throw out the trash on the afternoon prior to when the trash would be collected. Mr. Livermore also said he observed defendant cutting boxes and throwing them out.
 

 Mr. Livermore testified that the police arrived and arrested defendant, Weber, and Bolden. He stated that later the office manager told him to find all the boxes, and that the boxes hidden by defendant were found. He testified that he saw defendant pull out these PlayStation boxes when he was wheeling boxes to the back. After finding the boxes, they called the detective. Mr. Livermore testified that Andrews’ did not sell any gaming devices, including PlayStation 3 and Xbox consoles.
 

 |7Mr. Livermore testified that defendant was in charge of labeling the packages and that there was a UPS labeling machine at Andrews’ in the warehouse. Mr. Liver-more testified that only defendant used the machine.
 

 Detective Greg Floridi, a detective with the Jefferson Parish Sheriff’s Office, testified that in November and December of 2006 he participated in the investigation
 
 *162
 
 that led to defendant’s arrest. He testified that he arrived at Andrews’ to assist deputies who were investigating a theft. At the scene, he spoke with a deputy, with Mr. Brown of UPS, and with defendant, Andrews’ warehouse manager. Detective Floridi testified that at the time, defendant was not a suspect. He believed defendant would be a witness. Detective Floridi testified that he asked defendant if he had seen anything suspicious. He testified that defendant appeared nervous and was “a bit evasive” initially when he was questioned. Defendant advised Detective Flo-ridi that another employee, Bolden, had asked defendant to hold a package in defendant’s car for him. Detective Floridi testified that defendant said Bolden gave him the package to hold while he went get something to eat, but did not explain why. Defendant then said “I don’t want it; here, you can take it.” Detective Floridi said defendant was nervous and went to take the package out of his trunk. Defendant gave the package to Detective Floridi. Detective Floridi explained that the package defendant gave him consisted of a sealed box with a label affixed to it that was addressed to Andrews’. The box contained a PlayStation gaming console.
 

 Detective Floridi testified that defendant and two co-defendants, Weber and Bolden, were transported to the Detective Bureau for further investigation. Detective Floridi stated that defendant and Weber were both interviewed, but Bolden did not want to be interviewed.
 

 | ^Defendant was advised of his rights and waived them. Defendant then made statements regarding the theft investigation. Detective Floridi asked defendant if he had ever sold any PlayStations on eBay, and defendant admitted to buying a PlayStation 3 on eBay and then re-selling it on eBay. Defendant also said he purchased a PlayStation 3 from Bolden about three weeks before and that it was at his house.
 

 Detective Floridi testified that he asked defendant about the internet as a result of something Weber had said. Weber gave a statement to Lieutenant Penouilh. Detective Floridi testified that Weber said that both he and defendant worked at Andrews’ and at UPS, and that defendant produced shipping labels at Andrews’ and gave him the packaging slips from Andrews’ and advised him to place these labels on the packages at UPS and the packages would then be shipped to Andrews’, as opposed to being shipped to their true locations. Weber said the packages were intercepted at Andrews’ and then defendant would sell the packages on eBay.
 

 Detective Floridi testified that the PlayStation at defendant’s house was recovered. He explained that Mississippi authorities went to defendant’s house and obtained consent to search from defendant’s wife.
 

 Detective Floridi testified that when they searched the warehouse initially, they did not find any gaming consoles. However, the owner of the warehouse and employees later did their own search. Detective Floridi stated that PlayStation 3 consoles were recovered in the warehouse at Andrews’. He explained that boxes were found that were addressed to Andrews’, but these labels had been placed over other labels addressed to GameStop. Detective Floridi concluded that the labels had to have been changed prior to when they arrived at Andrews’. Detective | (¡Floridi testified that he did not know who put the labels on the packages, but was aware that Weber and Bolden were in a position to do it.
 

 Detective Floridi testified that he did not believe Bolden had anything in his trunk, but that Weber had some electronic items in the trunk of his vehicle. Weber
 
 *163
 
 had a PlayStation in his trunk. After the investigation, it was discovered that at least some of the items in Weber’s trunk were missing items that had been reported by UPS.
 

 Detective Floridi reviewed defendant’s eBay activity and received a printout containing defendant’s sales and bidding history from eBay security. Detective Floridi testified that on December 4, 2006, defendant placed a PlayStation 3 for sale on eBay and that on December 9, 2006, he placed three more PlayStation 3 consoles for sale. On December 4th, he sold one for $820.00 and on December 9, he sold another for $740.72. Defendant had described the listed bidding items as brand-new and factory-sealed PlayStations. According to the report received from eBay, defendant placed four PlayStations and two Xbox 360 gaming consoles for sale on eBay between November 30, 2006 and December 9, 2006.
 

 Defense witness Clifton Dreyfus testified that defendant worked for him at UPS at the Earhart facility, and that defendant worked from 5:30 p.m. until about 8:30 p.m. He stated if something came in from Texas at 4:00 a.m. to be delivered at 9:00 a.m. that defendant would not have had access to it because of his hours. Mr. Dreyfus explained that defendant had been working the 4:00 a.m. shift, but asked to be switched to the evening shift.
 

 Mr. Brown was also called as a defense witness. He testified that the GPS package was unloaded out of the trailer into the facility at approximately 5:30 or 6:00 a.m. on the same morning it was delivered. He testified that Weber and Bolden were working on that morning.
 

 | mAnother defense witness, Darlene Jones, testified that she was friends with defendant’s mother and had sold defendant video games and two PlayStation 3 gaming consoles while she was acting as an agent for her friend’s son. She identified a receipt she wrote for defendant when she sold him the games and consoles for $1200.00. The date it was signed, December 3, 2006, is the date Mrs. Jones said defendant physically took the items into his custody.
 

 In his first allegation of error, defendant alleges that the trial court erred in accepting the jury’s guilty verdict. Defendant alleges that the State failed to present sufficient evidence to sustain his conviction because there was no evidence to suggest that he knowingly and actively participated in taking the PlayStation 3 and X-box 360 devices. He does not refute that GameStop equipment was rerouted to Andrews’ or that someone fraudulently placed labels on the shipping boxes for delivery to Andrews’, he just blames these actions on his co-workers, Weber and Bolden. He argues that he was convicted simply because he worked with Weber and Bolden, because he had one of the devices in his car, and because of his nervous reaction to the police. Defendant argues that the State’s entire case of defendant being the culprit depended on the testimony of Mr. Livermore, who based his testimony on defendant’s reaction to seeing the GPS device in one of the boxes. Defendant blames this reaction on his realization at the time that he had purchased stolen goods from Bolden and Weber. Defendant concludes that at most, he is guilty of illegal possession of stolen things or unauthorized use of a movable.
 

 The State responds that it is apparent from the testimony presented that defendant was involved in a scheme to steal and sell for profit video gaming devices from GameStop and, therefore, possessed the requisite specific intent to commit the crime. The State argues that defendant created UPS labels and passed | nthem to
 
 *164
 
 Weber at UPS. The labels were placed on the packages and were redirected to Andrews’, where defendant would receive the stolen property and list them on eBay for profit. The State argues that the alternate hypothesis of events offered by defendant, that he was not privy to the scheme, and simply purchased a gaming device from a co-worker unaware that it was stolen, does not address how or why defendant listed and sold several factory-sealed gaming devices on eBay. The State concludes the jury found its witnesses more credible than the defense witnesses, and that the evidence was sufficient to support the theft conviction.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 See State v. Ortiz,
 
 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930,
 
 cert.denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998);
 
 State v. Bailey,
 
 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55,
 
 writ denied,
 
 04-1605 (La.11/15/04), 887 So.2d 476,
 
 cert. denied,
 
 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 State v. Harrell,
 
 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
 

 “Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.”
 
 State v. Kempton,
 
 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. |1215:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).
 

 Defendant was convicted of theft in violation of LSA-R.S. 14:67. LSA-R.S. 14:67(A) defines theft as follows:
 

 Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
 

 As such, in order to support a conviction for theft pursuant to LSA-R.S. 14:67, the State is required to prove that the defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken.
 
 State v. Carmen,
 
 08-478, p. 7 (La.App. 5 Cir. 1/27/09), 3 So.3d 587, 591. In addition, the State is required to prove the value of the stolen property, since the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen goods.
 
 State v. Ramsdell,
 
 06-644, pp. 6-7 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 511. In this case, the State was
 
 *165
 
 required to prove that the value of the goods was over $500.00.
 

 Theft is a crime of specific intent.
 
 State v. Kibbe,
 
 04-349, p. 7 (La.App. 5 Cir. 10/26/04), 887 So.2d 565, 569. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is a legal conclusion to be resolved by the fact finder.
 
 Kibbe, supra.
 

 We find that the State presented sufficient evidence for the jury to conclude that property was taken, more specifically gaming consoles, belonging to GameStop, without its consent, and that the value of this property was in excess of $500.00. Further, the State presented evidence that defendant was involved in the scheme that involved re-labeling and re-routing delivery, resulting in the misappropriation of these gaming consoles from GameStop. Although defendant denies involvement and blames the misappropriation on Weber and Bolden, the State did present evidence of defendant’s involvement in the scheme.
 

 Weber’s statement presented at trial implicated both himself and defendant in the scheme. Weber said that defendant produced the shipping labels at Andrews’ and gave him the labels to put on the PlayStation packages at UPS. Weber explained that after the packages were delivered to Andrews’, defendant would sell the items on eBay. The State also presented evidence that showed that defendant listed brand new PlayStation and Xbox consoles for sale on eBay and sold two of them. Furthermore, GameStop resumed receiving their shipments after the investigation concluded.
 

 Testimony was presented that only defendant made the labels at Andrews’ that were used in the scheme to re-route the gaming consoles. Although defendant discounts his reaction to finding the GPS device in the box as a reaction to realizing he had bought stolen goods, defendant’s actions at that time appear to be efforts in covering up the scheme. Testimony was presented that Weber and Bolden were not at Andrews’ at the time the package that contained the GPS device was delivered. Further, Weber and Bolden arrived after the GPS device | uwas found. The GPS device was found 40 or 50 yards behind the building in grass. Mr. Liver-more testified that he saw defendant take out the GPS device and saw defendant cutting up boxes. He also testified to seeing defendant pulling out PlayStation boxes. Further, he stated that defendant told him to hurry and wheel the boxes away.
 

 The jurors clearly found the testimony of the State witnesses more credible than the testimony of the defense witnesses. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact.
 
 State v. Jones,
 
 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.
 
 Id.
 
 It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.
 
 Id.
 

 The jury was presented with all of the evidence, and it appears the jury rejected defendant’s theory that only Weber and Bolden were involved in the scheme to misappropriate the gaming consoles from
 
 *166
 
 GameStop. Based on the foregoing, we find that the evidence, viewed in a light most favorable to the State, was sufficient to establish that defendant was guilty of the essential elements of the crime beyond a reasonable doubt.
 

 We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which merit our attention.
 

 There are discrepancies in the commitment and the transcript. Although the commitment reflects that defendant was properly advised of the prescriptive period hr,for filing post-conviction relief, the transcript reflects an incomplete advisal. In
 
 State v. Davenport,
 
 08-463, pp. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, this Court corrected this error by way of its opinion rather than a remand. Following
 
 Davenport,
 
 we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922. See
 
 State v. Schaller,
 
 08-522 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046.
 

 The trial court’s order of restitution contains the following error. LSA-C.Cr.P. art. 895.1 A(l) provides:
 

 When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution ' in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
 

 The transcript reflects that the trial judge stated the following when ordering the payment of restitution:
 

 I’m going to order that you make restitution to the victims in this case; the amount is over Sixteen Thousand, but we’re going to let the probation officers get an exact amount from either the D.A.’s Office, or the victim. And I’m going to give you two years to pay that restitution.
 

 As such, we note that the trial judge failed to specify who the victim or victims were in this case that restitution would be paid. Further, the trial judge failed to specify the amount of restitution that would be paid. He noted the amount was over $16,000.00, hfjbut stated that the probation officers could get an exact amount from the D.A.’s Office or the victim.
 

 The statutory authorization for the ordering of restitution as a condition of probation requires the amount of restitution to be determined by the court.
 
 State v. Dassau,
 
 534 So.2d 467, 469 (La.1988). When the restitution is ordered in an amount to be determined by the probation department, that portion of the sentence is considered illegal.
 
 Id.
 

 We also note that the record does not reflect that the trial court determined defendant’s earning capacity and assets or set a payment schedule for restitution. LSA-C.Cr.P. art. 895.1 provides the “resti
 
 *167
 
 tution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.” Thus, for this reason, the court’s restitution order appears indeterminate. See
 
 State v. Echeverria,
 
 03-898, p. 12 (La.App. 5 Cir. 11/25/03), 862 So.2d 163, 170.
 

 Accordingly, we remand the matter to the trial court for a determination of the manner in which defendant will pay restitution, either in a lump sum or in installments, based on defendant’s earning capacity and assets. Further, the trial judge shall specify the victim to which the restitution is to be paid, as well as the specific amount of restitution to be paid.
 

 For the above discussed reasons, the defendant’s conviction and sentence are affirmed. This matter is remanded for the trial court to set a determinate amount of restitution, to specify the manner of its payment, and to specify the victim to be paid.
 

 AFFIRMED AND REMANDED.