ROBERT A. CHAISSON, Judge.
12Pefendant, Vori P. Webb, appeals her conviction and sentence for theft of goods valued at over $1,500.00. In particular, she seeks review of that portion of her sentence relating to the amount of restitution owed as well as the calculation of the monthly payments. For the reasons that follow, we affirm the total amount of restitution as set by the trial court; however, we remand the matter with instructions for the trial judge to set the manner of restitution payments after considering the earning capacity and assets of defendant.

PROCEDURAL HISTORY

On July 13, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant with a violation of LSA-R.S. 14:67, in that, between June 18, 2009, and March 17, 2011, she “did commit theft of U.S. Currency, valued at over $1,500.00, from Arcelor-Mittal D/B/A Mississippi River Recycling.” At the October 2, 2012 arraignment, defendant pled not guilty. On [¡¡March 11, 2013, defendant withdrew her not guilty plea and pled guilty as charged under LSA-C.Cr.P. art. 893.[1] The district court accepted defen *944 dant’s plea and thereafter set the matter for a restitution hearing on May 20, 2013.
After considering the evidence presented at the hearing, the trial judge ordered defendant to pay $777,500.00 in restitution to the victim. Afterward, the trial judge deferred imposition of sentence, placed defendant on active probation for five years, and imposed various special terms and conditions of probation, including restitution to the victim in the amount of $777,500.00 to be paid in 60 equal monthly installments. Defendant now appeals and specifically seeks review of the trial court’s rulings relating to the amount of restitution ordered as well as the calculation of the monthly payments.

FACTS

In 2005, ArcelorMittal d/b/a Mississippi River Recycling hired defendant to work at its Harvey scrap yard. At the yard, the company would buy scrap metal from the public and other sources, process it, load it, and ship it to the steel mill in LaPlace for remelting. In 2009, due to a downturn in the market, several employees were laid off. As a result, in March of 2009, defendant’s job expanded from just working the cashier window to both weighing the scrap that was brought into the yard as scale operator and paying the vendor for the material as cashier.
In particular, when a load of scrap metal was brought in for sale, the vendor/ truck driver would drive the truck onto the scale to be weighed. The truck driver would exit the vehicle and go to defendant who would enter his information into the computer and then weigh both the truck and its contents. The driver would 14then proceed into the yard to unload the scrap metal from the truck. The inspector who received the scrap would fill out an inspection ticket listing the name of the driver and the quality of the scrap. The vendor would then take the inspection ticket to defendant who would weigh the truck without its contents. Based on the difference in weight, defendant would issue the vendor a check for the scrap metal.
In March or April of 2011, the company saw some weight discrepancies between the weight of the scrap metal that should have been in the yard and what was actually in the yard. Initially, the supervisors of the company attributed these weight discrepancies to a new computer system that had been installed. During this same time frame, one of the company managers, David Strong, noticed that someone by the name of Jamal Parham had brought in plenty of material and would have been ranked as one of their top vendors. When Mr. Strong asked the employees about Mr. Parham, nobody knew who he was, what company he was with, or what truck he had; yet, Mr. Parham had allegedly been their largest deliverer of scrap for the prior two years. In addition, company representatives questioned the men who unloaded the trucks and signed the inspection tickets, but none were familiar with Mr. Parham or his vehicle.
During the course of the investigation relating to the missing inventory and the unknown vendor, company officials interviewed defendant. She gave two recorded statements, in which she admitted that she engaged in a fraudulent scheme with Mr. Parham to steal money from the company. During her statements, defendant explained that she would use weights from trucks that were delivering legitimate scrap loads in order to obtain weight tickets and generate transactions in the name of Jamal Parham. She further explained that after the new computer system was installed, she would type in a fictitious *945 weight and make a transaction. Defendant further claimed that not all the loads were false and that | ^sometimes Mr. Par-ham would come in with real loads and she would inflate the weights. Defendant maintained that she split the money 50/50 with Mr. Parham.
As a result of their investigation, company officials determined that a total of $825,000.00 in checks were made payable to Mr. Parham. Of this amount, defendant has paid back $47,500.00.

AMOUNT OF RESTITUTION

(Assignments of Error Numbers 1, 2, and 3)

On appeal, defendant challenges the trial court’s rulings regarding the amount of restitution.
After considering the evidence presented at the restitution hearing, the trial court set restitution at $825,000.00 based on the checks made out to Mr. Parham. From that figure, the trial court subtracted $47,500.00, the amount paid back to the company by defendant; thereafter, the court ordered defendant to pay the company $777,500.00 as a condition of her probation. In setting the amount of restitution, the trial court expressed his belief that Mr. Parham did not exist.
Defendant now challenges the amount of restitution ordered as well as the trial court’s determination that Mr. Parham did not exist. In particular, defendant argues that the trial judge erred by ordering restitution in excess of the proven pecuniary losses caused by her criminal activity. She contends that the trial judge ordered her to pay the total amount of the checks made out to Jamal Parham, but that he failed to give her any credit for the scrap metal Mr. Parham actually delivered to the scrap yard. Defendant further contends that considering the admission of the State’s attorney that Mr. Parham existed[2] and the lack of testimony from the Jefferson Parish Sheriffs Office investigator, there was ^insufficient evidence for the trial judge to find that Mr. Parham did not exist. We find no merit to these arguments.
When a court places a defendant on probation, it may impose any specific condition of probation reasonably related to his or her rehabilitation, including a requirement that he or she make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court. LSA-C.Cr.P. art. 895(A)(7). In addition, LSA-C.Cr.P. art. 895.1(A)(1) provides, in part, as follows:
When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash.... The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain.
In ordering restitution the trial judge has discretion and his decision will not be disturbed absent an abuse of this discretion. State v. Blanchard, 03-612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 668.
In the instant case, we find that the record supports the amount of restitution ordered by the trial court, as well as the trial court’s determination that Mr. Par-ham did not exist. At the restitution hearing, the testimony of the State’s witnesses and the State’s exhibits showed that defen *946 dant issued checks in the amount of $825,000.00 to Mr. Parham during the course of the fraud. This amount was offset by the $47,500.00 defendant returned to the company; therefore, the trial court properly ordered defendant to pay $777,500.00 in restitution to the victim.
In contesting the amount of restitution ordered, defendant contends that the trial judge erred by finding that Mr. Par-ham did not exist and further asserts that she should have received a credit for the amount of scrap metal Mr. Parham delivered to the company. At the restitution hearing, the evidence showed that in early 2011, the company noticed that a Mr. Par-ham had delivered plenty of |7material to the scrap yard and would have been ranked as one of their top vendors for the previous two years. Nevertheless, when all of the employees, including the men who unloaded the trucks and signed the inspection tickets, were questioned, none of them knew or had ever seen Mr. Par-ham or his vehicle. Additionally, the company had video of trucks going in and out of the scrap yard on certain dates, and there were 23 instances where checks to Mr. Parham were issued, but the video did not show trucks for Mr. Parham coming into the yard. Moreover, records showed that the alleged arrival and departure times of Mr. Parham to the scrap yard were suspicious, as they appeared to be excessive or improbable. Also, no loads from Mr. Parham were ever processed on days that defendant was on vacation. Lastly, defendant never produced Mr. Par-ham and did not give the company any information regarding his whereabouts. Also, the company and the Jefferson Parish Sheriffs Office tried to find Mr. Par-ham but were unsuccessful.
After hearing the testimony and considering all of the evidence, the trial judge obviously believed the State’s witnesses regarding the amount of money stolen and the non-existence of Mr. Par-ham. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Based on the evidence presented at the hearing, we find that the trial court did not err in ordering restitution in the amount of $777,500.00. We further find no error in the trial court’s determination that Mr. Parham did not exist and in his refusal to give defendant a credit for scrap metal allegedly brought in by Mr. Parham. Accordingly, the arguments raised in these assignments of error lack merit.

IdCALCULATION OF MONTHLY PAYMENTS

(Assignment of Error Number 4)

In her fourth assignment of error, defendant argues that the trial judge erred by failing to set the amount of the monthly restitution payments based on her earning capacity and assets.
At the restitution hearing, the trial court set restitution in the amount of $777,500.00, and thereafter indicated that he would let the probation department determine the monthly amount after doing an investigation as to defendant’s employment and expenses. Despite this assertion, the trial court thereafter ordered defendant to make restitution to the aggrieved party in the amount of $777,500.00 in 60 equal installments but that was “to be determined by the Probation Department.” Defendant now contends that the trial court erred in setting the monthly restitution payments without considering defendant’s earning capacity *947 and assets. We find merit to this argument.
LSA-C.Cr.P. art. 895.1(A)(1) provides that the restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
In State v. Joseph, 09-400 (La.App. 5 Cir. 12/29/09), 30 So.3d 157, 166-67, the trial judge failed to specify the amount of restitution that would be paid, but rather noted the amount was over $16,000.00 and stated that the probation officers could get an exact amount from the District Attorney’s Office or the victim. Further, the record did not reflect that the trial court determined the defendant’s earning capacity and assets or set a payment schedule for restitution. Based on the provisions of LSA-C.Cr.P. art. 895.1, this Court remanded the matter to the trial court for a determination of the manner in which the defendant would pay | Restitution, either in a lump sum or installments, based on the defendant’s earning capacity and assets.
In State v. McGee, 08-395 (La.App. 5 Cir. 10/28/08), 996 So.2d 1191, 1195, writ denied, 08-2791 (La.6/5/09), 9 So.3d 868, the trial court ordered defendant to pay $70,952.44 in restitution as directed by the probation department. This Court found that the trial court’s ruling on payment of restitution did not comply with the provisions of LSA-C.Cr.P. art. 895.1(A) and therefore remanded the matter to the trial court for a determination of the manner in which restitution should be paid based on defendant’s earning capacity and assets. See also State v. Alexander, 97-1199 (La.App. 5 Cir. 9/29/98), 720 So.2d 82, 88, writ denied, 98-3109 (La.4/9/99), 740 So.2d 628.
Likewise, in the present case, the trial court’s ruling on the payment of restitution failed to comply with the provisions of LSA-C.Cr.P. art. 895.1(A). First, it is unclear whether the trial court set the monthly payments. While the trial court stated that defendant was to pay the amount in 60 equal monthly installments, the trial court also stated that he was leaving the amount of the monthly payments up to the probation department. Moreover, if the trial court did set the monthly payments, he failed to consider the earning capacity and assets of defendant as required by LSA-C.Cr.P. art. 895.1(A). Accordingly, we remand the matter with instructions to the trial court to set the manner of the restitution payments after considering the earning capacity and assets of defendant.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
110Accordingly, defendant’s conviction and sentence are affirmed. This matter is remanded to the trial court for a determination of the manner of the restitution payments based on the defendant’s earning capacity and assets.

CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED.

. LSA-C.Cr.P. art. 893 provides in pertinent part:
E. (l)(a) When it appears that the best interest of the public and of the defendant will be served, the court may defer, in whole or in part, the imposition of a sentence after conviction of a first offense noncapital felony under the conditions set forth in this Paragraph. When a conviction is entered under this Paragraph, the court may defer the imposition of sentence and place the defendant on *944 probation under the supervision of the division of probation and parole.

. At the restitution hearing, the prosecutor stated, "[Mr. Parham] exists. We just can’t lay hands on him. We would have charged him.”