949 So.2d 508 (2006)
STATE of Louisiana
v.
Alton J. RAMSDELL.
No. 06-KA-644.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2006.
*509 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Blair Bright, Ken Dohre, Assistant District Attorneys, Gretna, Louisiana.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On December 28, 2004, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Alton J. Ramsdell, and co-defendants, Willie Davis, Jr. and Joseph Perique, Jr.,[1] with "theft of a 1998 Chevy truck, valued at greater than $1000," a violation of LSA-R.S. 14:67.[2] At his arraignment, the defendant pled not guilty. On January 25, 2006, after a one-day trial, a six-person jury found the defendant "guilty of theft of property having a value of $500 or more." On February 2, 2006, the trial court sentenced the defendant to six years at hard labor. After sentencing, the defense made an oral motion for new trial, which was denied by the trial court. On the same day, the State filed a multiple offender bill of information alleging the defendant to be a second felony offender, and the defendant stipulated to the allegations in the multiple bill. The defendant's previous sentence was vacated, and he was sentenced as a second offender to six years at hard labor without benefit of probation or suspension of sentence.
FACTS
Sergeant Sandra Arsenaux of the Jefferson Parish Sheriff's Office testified that, on December 4, 2004, she was working a paid detail at the Target store located in Clearview Mall at 4500 Veterans Blvd. On a surveillance camera, at approximately 9:30 p.m., she observed a green Suburban pull behind a white Tahoe, blocking it in, which she found suspicious. The white Tahoe contained three females, two of whom were just involved in a suspicious check transaction in Target. Two men exited the green Suburban, went over to the white Tahoe, and spoke to the females. Both the Suburban and the Tahoe moved to parking spaces in another lane, three spaces a part. A fourth bald-headed man *510 exited the green Suburban, went to a blue Chevy truck parked next to the white Tahoe, unlocked the truck, and opened the door. Then, one of the men, who was described as having dreadlocks, got into the truck, "start[ed] fooling with the ignition," manipulated the steering column, and drove the truck out of the parking lot.
The blue truck turned onto Veterans Blvd, eastbound, and was followed by the white Tahoe, which was being followed by the green Suburban. Sergeant Arsenaux testified that she pursued the green Suburban and never lost sight of it, except for a few seconds. She did not see anyone get in or out of the Suburban while she pursued it. Sergeant Arsenaux eventually pulled the Suburban over between an eighth and a quarter of a mile away, and the defendant and two other men were in the Suburban.
The jury was shown a videotape of the entire incident in the parking lot, preceding the vehicles' travel onto Veterans Blvd. Sergeant Arsenaux admitted that the videotape does not show that the defendant was at the Target scene. However, Sergeant Arsenaux testified that the defendant was in the green Suburban when she pulled the vehicle over, and she did not see the Suburban pick up anyone after leaving the Target parking lot. Sergeant Arsenaux later learned that the green 1998 Suburban truck was registered to Veronica Ramsdell. Sergeant Arsenaux seized evidence at the scene, which included screwdrivers and "a couple of other tools." She described them as "burglary-type" tools.
Officer Stephanie Duplantis of the Jefferson Parish Sheriff's Office testified that she was on patrol on December 4, 2004, when she heard a call on the radio from a sergeant working a detail at Target. The sergeant indicated that she had a stolen vehicle in progress and it was a blue Chevy truck. She also stated that a green Suburban and a white Tahoe were involved. Officer Duplantis waited on Veterans Blvd. and Houma until she saw a blue Chevy truck followed by a white Tahoe and a green Suburban, and then, finally, the sergeant's car. She followed the green Suburban along with Sergeant Arsenaux after it left the Target parking lot, until other police units arrived. Officer Duplantis testified that she saw the green Suburban leave the Target parking lot and it did not stop, nor did she see anyone get in or out of it, from the time it left the Target parking lot until it was pulled over by police. After the other officers arrived, she chased the blue pickup truck until she found it abandoned. The truck was running with the door open. She examined the pickup truck, and found the steering column broken. A screwdriver and vice grips were on the front seat.
John Hayes testified that he is the owner of the 1995 half-ton blue Chevy pickup truck that was taken from Clearview Mall. He did not give anyone permission to use his truck, including the defendant. Hayes testified that his truck had some damage to the driver's door and the steering column. He had the truck's ignition and surrounding collar replaced for approximately $100 or more. Hayes replaced these items to enable him to start the truck. In order to cosmetically repair the truck, he received an estimate from Chevy of about $2000.
The defense called Willie Davis, a co-defendant, to the stand. Davis testified that on the night of the theft, he was the driver of the green Suburban. At the time of trial, he had already pled guilty and was serving time for the theft. He also had prior felony convictions. Davis testified that he and Joseph Perry were in the green Suburban while it was in the parking lot. A third man was in the Suburban with them, but he got away. Davis refused *511 to reveal the identity of the third man in the vehicle in the parking lot. When he drove the green Suburban out of the parking lot, it was only he and Joe in the vehicle. He testified that the defendant was not in the green Suburban in the parking lot because, approximately three minutes before entering the Target parking lot, he dropped the defendant off at Ferrara's Big and Tall Men's Wear, which was one block away. He picked the defendant up on Veterans Blvd. after leaving the parking lot, as they had pre-arranged. Davis explained that screwdrivers were found in the car, because they were mechanics.
DISCUSSION
On appeal, the defendant argues that the evidence was insufficient to support his conviction, because the State provided no direct or reliable evidence of the value of the vehicle that was the subject of the theft. He claims that an estimate of repair costs for the vehicle is insufficient proof of the vehicle's value.
The State admits that the owner of the vehicle did not testify regarding its value. However, it argues that the video of the truck allowed the jury to estimate its value at more than $500 based upon its characteristics, which included an engine that performed well enough to be driven off the lot at Target. The State also claims that the truck performed well enough to be driven home by the owner. In the alternative, the State suggests that if it did not prove that the value of the vehicle exceeded $500, this Court could find that the evidence supports a conviction for the legislatively authorized lesser and included grade of the offense, theft of property valued between $300 and $500.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984). This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
In order to support a conviction for theft, the State is required to prove that the defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken. LSA-R.S. 14:67. State v. Hebrard, 94-410 (La.App. 5 Cir. 1/31/95), 650 So.2d 352, 353. In addition, the State is required to prove the value of the stolen property, because the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen property. State v. Brooks, 00-106 (La.App. 5 Cir. 9/26/00), 769 So.2d 1242, 1245.
In the present case, the defendant only argues that the State failed to *512 prove the value of the object taken. When the degree of the crime is based on the value of the stolen property possessed, the testimony of the owner is sufficient to establish the value of the stolen property if it is clear and uncontradicted. State v. Stack, 97-1176 (La.App. 5 Cir. 4/15/98), 710 So.2d 841, 844. The owner does not need to be qualified as an expert in order to testify as to the value of the thing owned by him. State v. Dilworth, 358 So.2d 1254, 1256-1257 (La.1978).
In State v. Bruff, 597 So.2d 122 (La.App. 5 Cir.1992), writ denied, 600 So.2d 676 (La.1992), the defendant was found guilty of unauthorized use of a vehicle valued in excess of $1000. The jury was shown photographs of the body of a two-year-old automobile apparently in very good, if not perfect condition. In addition, the jury was presented with evidence that the vehicle's engine performed well enough for the car to be driven. The vehicle was also on the lot of a reputable dealer, and was being offered for sale. This Court noted that jurors do not live in a vacuum and, therefore, they are exposed daily to the car buying and selling process. This Court found that the jurors "likely decided that all two-year-old Ford Taurus cars in apparently good and drivable condition were worth more than $1,000.00." Therefore, based on the evidence, the jury could reasonably have concluded that the particular Ford Taurus was worth more than $1,000.
In the present case, defendant was convicted of theft of property valued over $500. Although the truck's owner testified that he paid $100 for repairs to the truck and received a $2,000 estimate for cosmetic repairs, he did not testify regarding the value of the truck. However, the value of a vehicle is assessed using many factors and, just as in State v. Bruff, supra, the jury in this case was presented with sufficient evidence to reasonably conclude that the truck was worth at least $500.
The truck was a 1995 model, making it approximately nine years old at the time of the theft. The videotape shows that the truck was in good shape, had a toolbox on it, and the engine performed well enough for it to be driven from the parking lot. Mr. Hayes testified that he later drove the truck to his home. Considering the testimony and evidence before us, we find that a reasonable jury could have concluded that the value of the 1995 Chevy truck exceeded $500 based on the truck's condition as depicted in the videotape. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction of theft of property valued at $500 or more.
The defendant also requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request. The review reveals that there are two errors requiring corrective action.
First, the defendant was not given the correct time period for filing an application for post-conviction relief. The minute entries indicate that the defendant was informed that he had two years after his judgment of conviction and sentence become final to file for post-conviction relief. However, the sentencing transcript indicates that the trial court informed the defendant that he had two years after his judgment of conviction became final to seek post conviction relief.
LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction *513 relief. It is well settled that when the transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand the case to the trial court and order it to send the defendant written notice of the proper period for filing for post-conviction relief within ten days of the rendition of this opinion and to file proof in the record that the defendant received the notice. State v. Hutchinson, 02-60 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
Second, the original and habitual offender commitments indicate that the trial judge sentenced the defendant for the wrong grade of the offense. Both commitments indicate that the defendant was found guilty of "theft $300+," rather than theft of property valued at $500 or more. LSA-R.S. 14:67(B) provides for three grades of theft. Those grades are when the misappropriation or taking amounts to (1) a value of $500 or more, (2) a value of $300 or more, but less than $500, and (3) a value of less than $300. There is no grade for theft "in excess of $300." The verdict form and transcript clearly indicate that the defendant was convicted of theft of property valued at $500 or more. Accordingly, we remand the case to the trial court and order it to correct the minute entries/commitments to reflect the correct grade of the offense for which the defendant was convicted, i.e. theft of property valued at $500 or more. See State v. Terrase, 02-1009 (La.App. 5 Cir. 2/25/03), 841 So.2d 947, 951.
DECREE
For the reasons set forth above, we affirm defendant's conviction and sentence. However, we remand the case and order the trial court to inform the defendant of the appropriate prescriptive period for filing for post-conviction relief by sending him written notice within ten days of the rendition of this opinion and to file proof in the record that the defendant received the notice. We further order the trial court to correct the minute entries/commitments to reflect the correct grade of the offense for which the defendant was convicted.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The co-defendants were not tried with the defendant, and this appeal pertains solely to Alton J. Ramsdell.
[2] The bill of information charges the defendant with theft of property valued over $1000. LSA-R.S. 14:67(B)(1) provides the punishment for theft of property valued over $500. There is no separate category for theft of property valued over $1,000, so theft of property valued over $500 applies in this case.