WALTER J. ROTHSCHILD, Judge.
 

 |aThe Jefferson Parish District Attorney filed a bill of information charging defendant, Gregory Carmen, with theft of a laptop computer valued at over $500, in violation of LSA-R.S. 14:67.
 
 [1]
 
 Defendant was arraigned and pled not guilty. The State subsequently amended the bill of information to charge defendant with theft of property valued over $1,000, in violation of LSA-R.S. Defendant was arraigned on the amended bill and pled not guilty. On September 26 and 27, 2007, the case was tried before a six-person jury which found defendant guilty as charged. Defendant filed a motion for new trial,
 
 *589
 
 which was denied on October 22, 2007. On November 5, 2007, the trial court sentenced defendant to imprisonment at hard labor for two years, suspended this sentence, and placed him on active probation for three years. Defendant appeals.
 
 FACTS
 

 | ;,On May 21, 2004, Susan Dreier approached a security checkpoint at Louis Armstrong International Airport on her way to board a flight. She placed her employer’s laptop computer on the x-ray machine, but forgot to retrieve it after it was scanned. Shortly thereafter, Dreier discovered that the laptop was missing, so she returned to the checkpoint to inquire about it. Dreier became very upset when the laptop could not be located, so David Ricks, a lead screener, called for a screening manager. Agents Francis Ruholl and Billy Booth, both screening managers, responded to the call.
 

 After Dreier informed them of the situation, Agents Ruholl and Booth asked Ricks and defendant, Gregory Carmen, who was another lead screener, if they had seen the laptop. Defendant and Ricks both said they did not remember a laptop being left at the checkpoint. They started looking in bins and around the area, but did not find it. Afterwards, Agent Ruholl went to lost and found, but he was informed that no laptop had been turned in that afternoon. Agents Ruholl and Booth then viewed videotaped surveillance of the area in an attempt to locate the missing laptop.
 
 [2]
 

 On the videotapes, Agents Ruholl and Booth observed Dreier passing through the checkpoint and leaving the laptop behind.
 
 [3]
 
 Defendant moved the laptop down to the end of the table where people normally picked up their belongings, and it sat there. He then put the laptop into a gray bin where it sat for about a minute. He picked up the bin and placed it on an x-ray unit where it sat for approximately three minutes. Defendant picked up the bin again and took it to the back of the checkpoint where he placed it on top of an unused explosive detection machine.
 

 14The bin, which contained the laptop and a watch, stayed on the explosive detection machine for approximately 14 minutes. During that time, Ricks returned the watch to a passenger who was looking for it. Ricks then picked up the bin and took it to lane one where he placed it on top of the x-ray machine, and it sat for several minutes. Afterwards, defendant picked up the bin and took it to the supervisor’s area where he stayed for a very short period of time. He was out of view at that time as there were no cameras inside that area.
 

 When defendant returned into camera view, he went underneath a light carrying the bin. From that camera angle, both Agents Ruholl and Booth stated that they could see a laptop in the bin. Defendant proceeded to walk toward the entrance to the checkpoint with the bin on his shoulder and walked out into the terminal with the bin. The laptop, which was worth $2,038.65, was never brought to lost and found and was never recovered.
 

 As they viewed the videotaped surveillance in order to determine what happened to the laptop, Agents Ruholl and Booth would stop watching the videotape at certain points to go back to the checkpoint
 
 *590
 
 and ask defendant about the laptop. Although defendant had initially denied having any knowledge of a laptop left behind, when Agent Ruholl asked defendant what happened to the laptop that he moved to the explosive detection machine, defendant responded that he remembered seeing it. Agent Booth went back to the checkpoint as well and asked defendant about the laptop, and defendant said he may have moved it because they were very busy. After watching the videotapes, Agent Ru-holl called his supervisor and told him what he and Booth had seen on the tapes. Agents Ruholl and Booth were instructed to do nothing more, and their supervisor said that he would handle the matter from there.
 

 | ^Approximately one month later, Detective Michael Miller of the Jefferson Parish Sheriffs Office took defendant into an office to interview him. After he advised defendant of his rights, defendant waived them and said he did not take the laptop.
 
 [4]
 
 Detective Miller searched defendant’s house in Baton Rouge with his wife’s consent, but the laptop was not there. They also looked inside the windows of defendant’s truck, but did not see a laptop inside. Detective Miller heard that Michelle Glapion, an employee shuttle bus driver, had seen defendant carrying what appeared to be an expensive laptop computer on the employee shuttle on the day of the incident. He tried to interview her, but she did not return his call.
 

 Agent Booth testified that defendant’s actions on the videotapes did not comply with any Transportation Security Administration (TSA) policy. He explained that defendant did not do anything that he was supposed to do that day with respect to the laptop. Agent Ruholl could not offer any logical explanation as to why defendant would move the laptop all over the checkpoint. The agents explained that the policy was, when an employee finds something that is left behind on the checkpoint, he should turn it over to a supervisor, who in turn writes down on a tag when it was found, what lane it was found in, the time it was found, and the characteristics of the item. Afterwards, it is turned into lost and found.
 

 After the State rested its case, defendant took the stand and testified that he did not take the laptop. He claimed that he moved the laptop to different locations to get it out of the way of the mainstream of traffic so it would not be damaged. He also claimed that if a passenger had come back to look for a missing item that day, the passenger would have been more likely to see it on the explosive detection machine where he had put it. He said that Dreier had come through lane two and |fithat she would probably not have looked in lane one for her laptop where Ricks had inexplicably put it.
 

 Defendant explained that he followed TSA policy by bringing the laptop to the supervisor’s office and that the supervisor generally takes the item to lost and found. He indicated that the bin he took out of the checkpoint area and into the terminal, as shown on the video surveillance, did not contain the laptop. Rather, he contended that it was an empty bin that he saw in the supervisor’s area and he took it to the bathroom in the terminal to clean it because it was soiled. Although he carried the bin on his shoulder into the terminal, he stated that it was not heavy. He admitted that if a person had been standing next to him when he had the bin on his shoulder, he or she could not have seen what was inside.
 

 
 *591
 

 DISCUSSION
 

 In his second assignment of error on appeal,
 
 [5]
 
 defendant argues that his conviction must be overturned, because when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have concluded beyond a reasonable doubt that the State proved every element of the offense. He also argues that the State failed to exclude every reasonable hypothesis of innocence, as the evidence showed that David Ricks (the other lead screener), Michelle Glapion (the shuttle bus driver), or another person in the supervisor's area could have taken the laptop. He further maintains that none of the State’s witnesses had personal knowledge of the facts of the case. The State responds that the evidence was sufficient to prove the essential elements of the crime beyond a reasonable doubt.
 

 |7In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). In cases involving circumstantial evidence, the trial court must instruct the jury that, “ ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude evei’y reasonable hypothesis of innocence.’ ” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must “determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.”
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
 

 In order to support a conviction for theft pursuant to LSA-R.S. 14:67, the State is required to prove that the defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken.
 
 State v. Hebrard,
 
 94-410, p. 2 (La.App. 5 Cir. 1/31/95), 650 So.2d 352, 353.
 

 In the instant case, the State presented the testimony of three agents who saw defendant, on surveillance videotapes, put the laptop into a bin and move it to different locations at the checkpoint in violation of TSA policies. The agents also |Rtestified that defendant eventually put the bin containing the laptop on his shoulder and carried it away from the checkpoint into the terminal. The laptop was never found. Defendant denied taking the laptop. He contended that he took the bin containing the laptop to the supervisor’s office and left it there. He explained that he subsequently took an empty bin into the terminal to the bathroom to clean it because it was soiled. The jury viewed surveillance tapes of the incident.
 

 
 *592
 
 After listening to the testimony of the witnesses and viewing the videotaped surveillance, the jury obviously found the State’s witnesses more credible than defendant and rejected defendant’s version of the incident. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; therefore, the credibility of witnesses will not be reweighed on appeal.
 
 State v. Rowan,
 
 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
 

 Defendant argues that the State failed to exclude every reasonable hypothesis of innocence because Ricks, Glapion, or someone in the supervisor’s area might have taken the laptop. The agents testified that the videotapes showed that Ricks moved the bin containing the laptop, and Detective Miller testified that Ricks was rude and irritable during his interview and refused to answer further questions without his lawyer present. However, the evidence shows that Ricks only moved the bin containing the laptop one time and that defendant handled the bin after Ricks moved it. Additionally, although the agents testified that the videotapes showed that there was a person in the supervisor’s area when defendant went there with the bin containing the laptop, the jury obviously believed that defendant had the laptop in the bin he carried out of the checkpoint area and into the terminal. Also, although Detective Miller heard that Glapion, the shuttle bus driver, might have seen defendant carrying a laptop on the employee shuttle bus on | flthe day in question, none of the agents were able to speak to her and there is no evidence that she was involved in the theft. There was no evidence to reasonably suggest that Ricks, Glapion, or an unnamed person in the supervisor’s area took the laptop. Thus, the alternative hypotheses argued by defendant were not sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 

 Despite defendant’s claims, there is strong circumstantial evidence that defendant took the laptop. Several witnesses testified that they saw defendant, on the videotapes, walk away from the checkpoint and into the terminal carrying the bin containing the laptop. Further, the jurors viewed the surveillance videotapes and were able to make their own determinations regarding what the video showed. Even if the jurors could not see in the videotapes whether the laptop was in the bin that defendants took into the terminal, the circumstantial evidence suggested that it was. Defendant admitted that when he carried the bin on his shoulder out of the checkpoint area, a person standing next to him could not see what was inside. Further, it was reasonable for the jury to disbelieve defendant’s contention that he saw an empty soiled bin in the supervisor’s area and that he was taking it to a bathroom in the terminal to clean it. In addition, the jury heard testimony from the agents that defendant’s actions regarding the laptop were not in compliance with TSA policy.
 

 Based on our review of the entire record, including the videotaped surveillance, we find that when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of theft of the laptop. Accordingly, because the evidence was sufficient to support defendant’s conviction, this assignment of error is without merit.
 

 |]0In his first assignment of error, defendant argues that the district court committed legal error by allowing a non-expert, state witness to testify while the videotaped surveillance was played, over defendant’s objection that the video speaks
 
 *593
 
 for itself. Defendant specifically argues that the jurors should have been able to decide for themselves whether they saw the laptop in the bin that he was carrying when he exited the supervisor’s area and returned to the camera’s view. He notes that the contents of the videotape were essentially the State’s entire case.
 

 The State responds that the trial court acted within its discretion when allowing the agent to testify as to how his investigation proceeded and how his perceptions and inferences drawn from the videotape led to defendant’s arrest. The State further responds that defendant has failed to show how he was prejudiced by the agent’s testimony, as the agent was subject to cross-examination by defense counsel, and the jury was free to accept or reject the agent’s testimony.
 

 At trial, Agent Robert Klipp identified six CDs that were given to him by Richard Ridensky, the assistant federal security director for screening. Klipp testified that the CDs showed the videotaped surveillance at the airport on the day of the incident. While the CDs were playing for the jury, Klipp explained what they showed. He first pointed out the victim walking through the checkpoint and leaving her laptop. He then pointed her out again, noting that the next frame was the same time as the other camera, but a different angle.
 

 As Klipp was explaining what was occurring on the first CD, defense counsel lodged an objection to the testimony, arguing that the video spoke for itself. The trial judge overruled the objection, and the witness continued testifying while the CD was being played. Klipp subsequently fast-forwarded the CD and told the jury that they were seeing defendant placing a laptop into a gray bin. After Klipp continued telling the jury what was being shown on the CD and what they |nwere about to see, defense counsel objected again, arguing that the testimony was a narrative and that the witness was not responding to questions. The trial judge apparently agreed and told the prosecutor to ask the witness questions.
 

 Afterwards, the record reflects that the prosecutor began asking questions of the witness, to which he responded. When Klipp began telling the jury that they were about to see Ricks return a watch to a passenger, defense counsel objected, arguing that the witness should not be allowed to tell the jury what they were about to see. Defense counsel noted that at one point, the witness identified defendant on the CD even though the camera did not show his face. He contended that by the time the CD showed defendant going under the light with the bin, the witness would have conditioned the jurors to accept what he was saying as true. The trial judge responded that defense counsel would get an opportunity to cross-examine the witness to show any mistakes he might have made, and he noted defense counsel’s objection. The prosecutor continued asking Klipp questions regarding the CDs.
 

 During the CD that depicted defendant leaving the checkpoint area, the prosecutor asked Klipp if the gray bin shown was the same bin defendant had been carrying all afternoon. Defense counsel objected based on speculation, arguing that defendant went off camera and returned back onto the camera. The trial judge asked the prosecutor to rephrase the question. Afterwards, the prosecutor asked the witness to move the tape forward and show the jurors how he knew that it was the same bin. The witness did so and then testified, “there is a gray object inside this bin right here.” The prosecutor asked the witness whether that gray object resembled the gray object that was formerly identified as the laptop that had been pre
 
 *594
 
 viously placed into the bin. The witness answered affirmatively. Defense _Jj2C0unsel objected as to speculation, and the trial judge overruled the objection. The witness then concluded his testimony.
 

 The courts have routinely allowed witnesses to comment on the contents of a film or videotape if the testimony helps explain it.
 
 State v. Debroiv,
 
 33,592, p. 10 (La.App. 2 Cir. 6/21/00), 763 So.2d 791, 798,
 
 writ denied,
 
 00-2221 (La.10/5/01), 798 So.2d 957. If a lay witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. LSA-C.E. art. 701. The reviewing court must ask two pertinent questions to determine whether the trial court properly allowed such testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness’s observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error.
 
 State v. Casey,
 
 99-23, p. 12 (La.1/26/00), 775 So.2d 1022, 1033,
 
 cert denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 In the present case, the surveillance CDs show numerous passengers placing their belongings on x-ray machines, walking through metal detectors, collecting their belongings afterwards, and passing through doors carrying their belongings. The CDs also show airport employees assisting passengers through this process. Without the testimony of Agent Klipp, it would have been very difficult for the jurors to identify the victim and defendant on the CDs. It would have also been nearly impossible for the jurors to know where to look to see the laptop being placed into the bin and moved around the checkpoint, since there was so much activity at the checkpoint at that time. The jurors likely would have been confused without the agent’s testimony, especially since there were many different camera | ^angles on the CDs. Also, it was necessary for Agent Klipp to testify that he saw a gray object on the CD that resembled Dreier’s laptop in the bin that defendant carried out of the terminal, since this testimony explained why the agents arrested defendant for stealing it.
 

 The testimony of Agent Klipp, a non-expert witness, was not speculative opinion evidence. Rather, his testimony was comprised of facts and inferences from facts based upon his observations of the CDs. It was admitted to assist the jurors to understand what was being shown on the CDs and to explain the course of his investigation which culminated in defendant’s arrest. Further, defense counsel cross-examined Agent Klipp regarding the CDs. Also, the jurors saw the CDs and, therefore, were free to accept or reject Agent Klipp’s testimony and draw their own conclusions.
 

 Based on the foregoing, we find no error in the trial court’s decision to allow Agent Klipp to testify regarding what was happening on the CDs while they were playing. Accordingly, this assignment of error is without merit.
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La. App. 5 Cir.1990). No errors requiring corrective action were noted.
 

 DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . The amended bill of information charges defendant with theft of property valued over $1000. LSA-R.S. 14:67 B(l) provides the punishment for theft of property valued over $500. There is no separate category for theft of property valued over $1,000, so theft of property valued over $500 applies in this case.
 
 State v. Ramsdell,
 
 06-644, p. 2 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 513.
 

 [2]
 

 . The surveillance system had recently been covertly installed due to problems with employee theft.
 

 [3]
 

 . The surveillance videotapes were shown to the jury during the testimony of Agent Robert Klipp, who on the day in question was the Acting Assistant Federal Security Director for Law Enforcement for the Transportation Security Administration (TSA).
 

 [4]
 

 . Defendant was not arrested on the day of the incident because the airport directors did not want to jeopardize the investigation into thefts by the baggage handlers.
 

 [5]
 

 . When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La. 1992);
 
 State v. Guillara,
 
 04-899, p. 9 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1070,
 
 writ denied,
 
 05-1381 (La.1/13/06), 920 So.2d 233.