SUSAN M. CHEHARDY, Chief Judge.
|2On appeal, defendant challenges his conviction and sentence for attempted theft over $500.00. For the following reasons, we affirm defendant’s conviction, vacate the sentence, and remand for resen-tencing.

Procedural History

On February 24, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Mark Rich-ey, with one count of theft in excess of $1,000.00, in violation of La. R.S. 14:67. On May 12, 2011, defendant was arraigned and entered a plea of not guilty to the charge.
On August 21, 2012, the State amended the bill of information[1] to charge defendant with theft in excess of $500.00 and the matter proceeded to trial before a six-person jury. The next day, the jury found defendant guilty of the responsive verdict of attempted theft of greater than $500.00, specifically finding the amount was $63,000.00. On September 7, 2012, defendant filed motions for new trial and | spost-verdict judgment of acquittal, which were heard and denied on September 18, 2012.
On October 4, 2012, at defendant’s sentencing, the trial court sentenced defendant to three years at hard labor, suspended, and placed defendant on active probation for five years, with conditions that defendant make restitution to the victim of this case and comply with the conditions of his probation, including restitution, in an unrelated matter.
On October 9, 2012, defendant filed a motion for reconsideration of sentence, asking for release from the condition of restitution. On November 7, 2012, the trial court granted defendant’s motion for appeal.[2] On November 8, 2012, the trial *1146 court denied defendant’s motion for reconsideration of sentence.[3] This appeal follows.

Facts

In 2007, two couples, George and Carey Rochelle, and Doyle and Michelle Duhe, hired Mark Richey and Phoenix Home Solutions, to construct a fishing camp for them in Grand Isle, Louisiana. On June 26, 2007, the Rochelles and Duhes and Mark Richey (hereinafter “defendant”) signed a deposit agreement and then, as a deposit, Carey Rochelle wrote a check for $24,364.00 to Phoenix Home Solutions.
^Subsequently, defendant met with the Rochelles and Duhes several times to finalize the building plans.[4] The Rochelles and Duhes wanted a “storm-proof’ camp so they contracted for a house built using specially-manufactured “storm-resistant” panels (“M-2 panels”).[5]
On March 20, 2008, the Rochelles, Duhes, and defendant signed a “Contractor Agreement,” setting forth the scope of the work, time of completion, the price, and a payment schedule.[6] That day, Carey Rochelle wrote a check for $30,000.00, payable to “Phoenix Home Solutions,” for “Construction Draw — Panel order deposit.” It is undisputed that this deposit equaled half of the cost of the panels to construct the entire camp. It is further undisputed that no panels were ever delivered to the job site.[7]
On April 17, 2008, Phoenix invoiced the Rochelles for $13,183.90, for pilings at a cost of $9,135.00 and the “city permit, plan review, and inspection” at a cost of $1,850.90, plus “profit.”[8] On April 18, 2008, Carey Rochelle wrote a check to Phoenix Home Solutions for $13,183.90 to cover “Construction Draw # 2.” At trial, George Rochelle testified that, shortly thereafter, defendant requested more money from Mr. Rochelle to pay the subcontractor to drive the pilings because the money from the second draw “had been spent elsewhere.”
Instead of paying defendant again for the pilings, Mr. Rochelle directly paid the piling subcontractor approximately $18,000.00. Testimony at trial suggested that the pilings were driven in November of 2008.
| ^Thereafter, on May 15, 2009, Mr. Rochelle was informed by the Grand Isle *1147 building inspector that his site had been “Red Tagged” and a “Stop Work” Order had been issued for eleven reasons, starting with failing to obtain a building permit for the entire job.[9] When Mr. Rochelle received this notice, the only work that had been performed at the site was driving the pilings, which was unpermitted because defendant failed to apply to the building inspector to inspect the process as required by ordinance.
According to Mr. Rochelle, on September 8, 2009, he e-mailed defendant, stating:
On 9-6-2009 it is [sic] now been 4 months since concrete foundation construction was stopped for building without a permit. Today I have talked to Picciola & Associates Inc. to see if you have been working with them to get things started. I was informed by them that they have not hurd/sic/ from you since informing you of the N.S.F. check you gave them. It is obvious that you have no intention of building this camp. Please return all the money given to you by 9-15-2009 so that I can find another contractor.
Defendant responded via e-mail on September 9, 2009, with the following:
The check to Piccola was returned to them because of a hold on a large deposit that we made. Those funds will be released on 9/10. It is my intention to hand deliver a certified check for the review on Thursday.
I understand your frustration, and I will do everything I can to bring this to an amicable close.
Marty Rabalais has expressed interest in picking up the project. Which ever [sic] contractor you chose [sic], I will work with them to make the transition smooth.
|fiOn September 11, 2009, Mr. Rochelle visited the construction site, which was overgrown with weeds and holding water. Further, Grand Isle authorities had posted a notice that he would be cited if he did not render the property safe.[10]
On September 14, 2009, Mr. Rochelle again e-mailed defendant, stating:
Tomorrow is the 15th, I inspected the property on 9-11-2009 and took pictures of the lack of any work being done. I contacted the Grand Isle inspector to see if any effort to get a permit had been made, and was told that I was going to be fined if the mess was not taken care of immediately. After speaking to some of the companies you said you paid, I am wondering where my money went. I am asking for the last time!!!!! Please return all the money *1148 given to you for this project by 9-15-2009.
Defendant responded on September 15, 2009 with the following:
Here are [a] few options that I believe will allow us to part amicably.
1. I can continue to move forward with the slab and then turn the project over to Marty to build the remaining structure.
2. I can set up a repayment plan to reimburse you the funds you are out.
3. I can work with any other contractor you may have in mind to apply those funds to your project.
Please let me know your thoughts, I am willing to do everything possible to bring this to a close.
On September 18, 2009, defendant sent Mr. Rochelle the following e-mail:
I plan to pay your money back by paying you $5,000.00 to $10,000.00 or more per month until payed [sic] out. I am also selling a lot of equipment that I no longer need ($500,000). As I do those proceeds will go to your repayment.
On October 5, 2009, defendant sent Mr. Rochelle an e-mail asking, “What address would you like me to send the payments to?” On October 20, 2009, defendant sent Mr. Rochelle an e-mail stating: “I would like to resolve our issues as soon as possible. Please contact me so we can move |7forward.” As of August 21, 2012, defendant had not returned any of the funds paid by the Rochelles.[11] After hearing the testimony and evidence, the six-person jury found defendant guilty of the lesser-included offense of attempted theft of greater than $500.00 from George Rochelle. Defendant appeals his conviction and sentence.

Law and Argument

On appeal, defendant raises three assignments of error: first, “the trial court erred in preventing the defense[sic] providing a defense”; second, the evidence of criminal intent was insufficient to uphold the jury’s conviction; and third, “the trial court imposed and[sic] illegal sentence.”
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.[12] If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary.[13] Thus, we turn first to defendant’s second assignment of error.
In defendant’s second assignment of error, he argues that the trial court erred in denying his motion for new trial on the basis of insufficient evidence. Specifically, defendant submits that the State failed to prove defendant possessed the requisite intent to defraud or take from the victim and that the State failed to prove the amount of restitution.
The State responds that defendant’s “intent to defraud is established not only by his failure to perform any meaningful work on the project over an extended and lengthy period of time, but also by his prevarications, misrepresentations, and attempts to delay the matter.”
|sAfter his conviction, defendant moved for a new trial on, among other grounds, the basis that the verdict was contrary to the law and the evidence. The trial court *1149 denied relief, finding, “Here the verdict is neither contrary to the law or the evidence. Further, the evidence is more than sufficient to convict the defendant of theft.”
We note that, although the denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal,[14] the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances.[15] Further, the question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal,[16] which defendant filed and argued at the same hearing as his motion for new trial. Accordingly, we will review the merits of defendant’s claim.
In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[17] Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.[18] Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.[19]
| nIt is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review.[20] Indeed, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.[21]
Accordingly, the reviewing court is not to consider whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one.[22] Thus, where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.[23] This is because only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s un *1150 derstanding and belief in what is said.[24]
In this ease, defendant was charged with theft of U.S. currency valued at over $500.00, in violation of La. R.S. 14:67, but was convicted of the responsive verdict of attempted theft of U.S. currency valued at over $500.00, in violation of La. R.S. 14:(27)67.[25] When a defendant does not object to a legislatively responsive verdict, the defendant’s conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.[26]
|inIn the present case, defendant did not lodge an objection to the responsive verdicts, which included attempted theft over $500.00. Accordingly, defendant is entitled to a reversal of his conviction only if the evidence is insufficient to support a conviction of the charged offense, i.e., theft over $500.00.
La. R.S. 14:67(A) defines theft as:
[T]he misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Therefore, in order to support a conviction for theft, the State is required to prove that the defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken.[27]
The State must also prove the value of the stolen property, because the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen property.[28] The testimony of the owner is sufficient to establish the value of the stolen property if it is clear and uncontradict-ed.[29] The owner does not need to be qualified as an expert in order to testify as to the value of the thing owned by him.[30]
Theft is a crime of specific intent.[31] Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”[32] Specific intent may be inferred from the circumstances of a transaction and |nfrom the actions of the accused.[33] Further, specific intent is a legal conclusion to be resolved by the fact-finder.[34]
On appeal, defendant claims that the State failed to prove beyond a reasonable doubt that he possessed the requisite intent to defraud or take from the victim and *1151 that the amount of restitution was incorrect.[35] We disagree.
In State v. Greene,[36] the Louisiana Supreme Court reversed the fourth circuit, and reinstated the defendant’s conviction for unauthorized use of a movable, in violation of La. R.S. 14:68.[37] In Greene, the victim and the defendant, who represented himself as a licensed contractor, entered into a contract for defendant to repair the victim’s Katrina-damaged home for $67,000.00. When the contract was signed, the victim paid defendant a deposit of $25,200.00.[38]
The defendant obtained a building permit two days later, but did not commence work until approximately one month later when he parked a trailer in front of the house, cut down a tree in the back, and removed a damaged fence.[39] In the course of the preliminary work, the defendant informed the victim that subsequent phases of the repair, as agreed to in the contract, could not be accomplished without first repairing the foundation.[40] The victim declined a change in the terms of the contract and instructed the defendant to continue with other tasks as provided in the contract.[41]
1 ^However, within a week, the victim noticed no work had been done to the property.[42] She unsuccessfully attempted to contact the defendant over the next ten days.[43] Soon thereafter, the victim fired the defendant and terminated the contract, demanding repayment of her deposit, which defendant refused to repay. Id.
Two weeks after she fired defendant, the victim made a formal complaint to the Economic Crimes Department of the Orleans Parish District Attorney’s Office.[44] When a detective met with the defendant and inquired if he had considered repaying the victim, the defendant acknowledged that he owed the victim the deposit minus $4,800.00 for work we had performed. The defendant told the detective that he could not repay the victim’s deposit immediately because he had used the victim’s money to pay work crews, buy materials, and himself. Defendant did offer to repay the victim $5,000 a month for four months. The victim rejected the terms of the defendant’s repayment plan. Thereafter, defendant was arrested and charged with theft over $500.00, in violation of La. R.S. 14:67.
Defendant waived trial by jury and was found guilty of the lesser-included offense of unauthorized use of a movable, in violation of La. R.S. 14:68. On appeal, the fourth circuit reversed the defendant’s conviction, on the grounds that the State failed to prove the requisite intent to defraud to support defendant’s conviction and that “the dispute that existed between the parties was civil in nature not criminal and should have been handled in a civil proceeding, where any damages owed by *1152 either party could be properly assessed under the terms of the contract.”[45]
On certiorari, the Louisiana Supreme Court reversed the fourth circuit and reinstated the defendant’s conviction, finding that the evidence, when viewed in |isthe light most favorable to the prosecution, supported the guilty verdict.[46] In so concluding, the supreme court principally relied on the fact that, when entering into the contract with the victim, the defendant misrepresented himself as a Louisiana-licensed contractor when the evidence adduced at trial established that he was not.[47]
In State v. McMillian,[48] the victims entered into two contracts with the defendant, a general contractor, for a total price of $162,000.00. In the first contract, defendant received the first payment and began work but failed to complete the necessary framing. When the defendant requested the next payment, the victims were unable to acquire the funds from them mortgage company until the framing was completed as agreed upon.
On the second contract, the victims paid defendant $65,000.00 before work commenced.[49] After accepting $65,000.00, defendant installed three windows and three doors with no hardware and hung sheet rock, which was not taped or floated, in one room. No further work was completed by the defendant.[50]
Although the victims persistently emailed and telephoned the defendant pleading with him to finish the work, he refused to complete any further work.[51] The total amount of money that the victims gave to the defendant totaled $97,860.00. Subsequently, the victims learned that the defendant’s business telephone number had been disconnected and his place of business had been vacated. The victims also learned that the homeowner of the house the defendant |14gave them as a reference had fired the defendant for incomplete and substandard work and finished the work himself.[52]
In McMillian, the defendant was charged with and convicted of theft over $500.00, in violation of La. R.S. 14:67.[53] On appeal, the fourth circuit affirmed the defendant’s conviction, finding that a reasonable trier of fact could conclude that the defendant intended to permanently deprive the victims of money owed to them in excess of $500.00.[54]
Turning to the instant case, although defendant did not misrepresent himself as a licensed contractor as in Greene or disappear as in McMillian, we find that a rational juror could find, based on the evidence adduced at trial, that the State proved at trial that defendant took money from the victims through fraudulent conduct with the intent to permanently deprive the victims of their money.
Here, testimony at trial revealed that defendant failed to apply for the proper permits and inspections from the inception of the project, which suggests that defendant did not intend to construct the building. Further, vendors and subcontractors *1153 were not paid by defendant for their services, despite defendant invoicing and receiving funds totaling more than $63,000.00 from the Rochelles to pay for the work. Furthermore, in 2009, defendant had begun bankruptcy proceedings in his personal and business capacities so defendant’s inability to repay casts doubt on the honesty of his offer to repay.
Based on the foregoing, we find, in viewing this evidence in the light most favorable to the prosecution, and giving due deference to the factual findings made by the jury, that any rational trier of fact could have found that defendant had the specific intent to permanently deprive the victims of their money by means of 11sfraudulent conduct, practices, or representations. Accordingly, we find no abuse of the trial court’s discretion in denying defendant’s motion for new trial based on the verdict being contrary to the law and the evidence.[55] This assignment of error lacks merit.
Returning to defendant’s first assignment of error, he argues that “the trial court erred in preventing the defense providing a defense [sic].” Specifically, defendant argues that he was denied his constitutional right to present a defense when the trial judge sustained the State’s objections during the defense’s opening statement, during the defense’s case-in-chief, and during jury deliberations.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense.[56] However, this right does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.[57]
Initially, we note that appellant’s brief contains allegations but no jurisprudential or statutory support for those allegations, which comes perilously close to failure to brief this assignment of error. All specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed.[58] In so far as we are able to discern from the scant submission the nature of defendant’s argument, we will address his claims.
| |fiFirst, defendant claims that he was denied his right to present a defense when the trial court sustained several of the State’s objections during the defense’s opening statement. Generally, the scope of counsel’s opening statement is left to the sound discretion of the trial judge and, in the absence of an abuse of discretion, this Court will not reverse a lower court’s ruling.[59] Our review of the opening statement of defense counsel discloses that counsel was generally afforded wide latitude by the trial court. In fact, the statement as a whole was exhaustive in nature. We find, therefore, that the trial court did not abuse its discretion in sustaining the *1154 State’s objections.[60]
Next, defendant argues that his right to present a defense was denied when the trial court refused to accept his witness, an engineer who created the house plans for the defunct project, as an expert in the field of civil and structural engineering. The court agreed to allow the engineer to testify as a fact witness in this case.
La. C.E. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In reviewing the decision of a trial court in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert and consider that the decision to accept or reject the offer rests within the sound discretion of the trial court.[61]
Here, where the offense is theft of currency, the issue, as stated by the trial court, is “what happened to the money.” We cannot see how “scientific, technical, |17or specialized knowledge in the field of engineering” would have assisted the trier of fact in determining what happened to the money. Thus, we find no abuse of the trial court’s discretion in rejecting the defense’s offer of an engineer as an expert in this case.[62]
Next, defendant further argues his right to present a defense was denied when his witness, another contractor, was prevented from testifying about defendant’s efforts to obtain the necessary panels. During the direct examination of this witness, defense counsel asked: “In connection with your discussions with Mr. Richey, did the subject of [M-2] panels ever come up?” The State objected on the basis of hearsay. During the bench conference, defense counsel explained that, through this witness, he sought “to show that [defendant] was trying to finish the project.” The State argued that introduction of this testimony would amount to the defendant testifying without taking the stand. The trial court sustained the State’s objection, finding such testimony amounted to inadmissible hearsay.
On appeal, defendant contends that this does not constitute hearsay. Hearsay is defined by La. C.E. art. 801(C) as “a statement, other than one made by the declar-ant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” Hearsay is not admissible except as otherwise provided by the Code or other legislation.[63] Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence will not be disturbed.[64]
*1155 Here, defense counsel sought to introduce, through Mr. Rabalais’ testimony, a statement by the defendant that he was trying to finish the project, which, by 11Rdefinition, is an out-of-court statement by a non-testifying declarant offered for the truth of the matter asserted. This testimony was hearsay. Further, the defense did not point to a valid exception to the hearsay rule; thus, this constituted inadmissible hearsay. We find that the trial court did not abuse its discretion in sustaining the State’s objection on this basis.
Lastly, defendant argues that the importance of the evidence excluded by the trial court’s rulings was made evident by the jury’s questions during deliberations. After retiring, the jury presented the court with the following questions:
What date did the M-2 panel company go out of business?
What date was the 30,000-dollar check given by Rochelle to Richey?
What was the day of the engineer’s invoice for the panel M-2 construction? What was the date of the e-mail of Rich-ey requesting address to mail payments? When was the letter from the town of Grand Isle with respect to the work order?
The trial court instructed the jury that its questions could not be answered because the jurors are required under the law to rely on their memory.
We note that testimony and evidence regarding each of these issues were elicited at trial. First, the defense elicited testimony from its witness that the M-2 panel company went out of business between March and May of 2008. Second, the Rochelles paid defendant $30,000.00 on March 20, 2008. Third, the first set of building plans, utilizing the M-2 panels, is dated October 31, 2007. Fourth, defendant e-mailed Mr. Rochelle requesting a mailing address on October 5, 2009. Fifth, the notice from the Grand Isle Building Inspector is dated May 15, 2009. Thus, defendant’s contention that |19the jury’s questions prove that he was prevented from introducing crucial evidence is erroneous.
In view of the foregoing, we find no support for defendant’s contention that his constitutional right to present a defense was violated by the trial court’s rulings in this case. This assignment of error lacks merit.
In his final assignment of error, defendant argues that “the trial court imposed and [sic] illegal sentence.” Specifically, he argues, first, that the prison sentence imposed is illegally excessive, and, second, that the restitution amount is illegal, or, in the alternative, that the restitution amount is unconstitutionally excessive. In response, the State concedes that the defendant’s term of imprisonment is illegally excessive. The State responds, however, that the amount of restitution is neither illegal nor unconstitutionally excessive.
With respect to defendant’s sentence, we find that it is illegally excessive. Here, the jury convicted defendant of attempted theft over $500.00, in violation of La. R.S. 14:27 and La. R.S. 14:67. At the time of the offense,[65] which was committed between June 27, 2007 and February 19, 2010, theft over $500.00 carried a penalty of imprisonment, with or without hard labor, for not more than ten years, or a fine of not more than three thousand dollars, or both. More importantly, however, before *1156 August 14, 2010,[66] La. R.S. 14:27(D)(2) provided, in pertinent part, that: “If the offense so attempted is theft, and is punishable as a felony, he shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both.”
12nHere, the trial judge initially sentenced defendant to three years with the Department of Corrections,[67] suspended, and placed defendant on active probation for five years, with the conditions of refraining from criminal conduct and making restitution. As defendant’s imposed sentence exceeds the maximum term of one year provided by the statute at the applicable time period, we find that defendant’s sentence imposed on October 4, 2012 is constitutionally excessive.[68] Accordingly, we vacate[69] defendant’s three-year sentence and remand for resentenc-ing.[70]

Error patent review

In this case, defendant requests an error patent review, which this Court routinely performs in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no error that requires correction.

Decree

Accordingly, for the foregoing reasons, defendant’s conviction is affirmed but his sentence is vacated. This matter is remanded for resentencing.

CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED

. The record does not reflect that defendant was arraigned on the amended charge. However, because defendant proceeded to trial on the amended charge without objection, he waived any irregularity therein. See State v. Morton, 12-27 (La.App. 5 Cir. 5/31/12), 97 So.3d 1034, 1044, writ denied, 12-1476 (La.1/18/13), 107 So.3d 625 (citing La.C.Cr.P. art. 555).

. On December 10, 2012, a "Motion and Order for Hearing to Revoke Probation” was filed by defendant's probation officer alleging that defendant had violated the conditions of his probation by failing to "refrain from criminal conduct.” Specifically, the Rule to Revoke alleged that, on November 18, 2012, defendant "was arrested by the St. Tammany Parish Sheriff’s Office for Vehicular Negligent *1146 Injuring, Driving While Intoxicated, Careless Operation, Driving Under Suspension, and Issuing Worthless Checks.” On January 31, 2013, defendant stipulated to the revocation, the trial court revoked defendant's probation, and imposed a sentence of three years imprisonment at hard labor. The revocation, which is not an appealable judgment, occurred after the granting of the motion for appeal, and is not before this Court on appeal. La.C.Cr.P. arts. 912 and 912.1(C)(1); State v. Franks, 04-1208 (La.App. 5 Cir. 4/26/05), 902 So.2d 450.

. Despite the trial court’s being divested of jurisdiction upon granting defendant's appeal on November 7, 2012, the court nonetheless maintained jurisdiction to rule on defendant’s motion for reconsideration of sentence on November 8, 2012. See La.C.Cr.P. art. 916(3).

. Craig Duos, the owner of Southeast Engineers ("Southeast”) and a Louisiana-licensed engineer, conducted the engineering analysis and prepared the plans for the Rochelle fishing camp. On October 31, 2007, Southeast billed and Phoenix paid $6,973.20 for the first set of plans.

. In 2008, a local company, Advanced Building Systems ("ABS”), was manufacturing the panels, which required special installation.

. The camp was to be completed on or before September 24, 2008.

. Testimony reflected that, in an unrelated turn of events, ABS went out of business without warning at some point in 2008 and the M-2 panels were difficult to obtain.

. The "profit” on this invoice totaled $3,863.00.

. The Grand Isle Building Inspector cited eleven violations, including: 1. A building permit has not been issued for any work other than pilings; 2. Pile inspections have not been requested or performed, therefore it is impossible for the inspector to verify that piles were driven to an adequate depth for bearing and uplift resistance purposes; 3. Forms have been set for the grade beam foundation prior to issuance of permit; 4. The forms that have been built are unlevel, have large gaps, are not adequately staked and are substandard; 5. Architectural review checklist has not been submitted to the Grand Isle Building Department; 6. Approval letter from the subdivision engineer has not been submitted; 7. Building Code compliance plan review has not been performed and approved, plan reviews are performed only after a complete permit application and appropriate fees have been paid; 8. Proof of ownership and a copy of the property tax has not been submitted; 9. Work must commence within 90 days of issuance of permit or permit is null and void; 10. An elevation certificate has not been submitted and property corners have not been marked; and 11. A completed permit application has not been received.

. Mr. Rochelle testified that he eventually had the lot filled, which totaled $2,800.00.

. In 2010, defendant filed bankruptcy with respect to his business and personal accounts.

. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. Id.

. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039 (citation omitted).

. Id.

. State v. Thomas, 08-813 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606 n. 3, writ denied, 09-1294 (La.4/5/10), 31 So.3d 361.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885.

. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

. Id.

. State v. Reed, 11-507 (La.App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-0644 (La.9/14/12), 97 So.3d 1014.

. See, State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418.

. See, Cloy v. Lee, 01-920 (La.App. 5 Cir. 1/15/02), 807 So.2d 900, 903.

. Id.

. Id.

. See, La.C.Cr.P. art. 814(A)(26).

. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 252 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

. State v. Carmen, 08-478 (La.App. 5 Cir. 1/27/09), 3 So.3d 587, 591.

. State v. Ramsdell, 06-644 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 511.

. Id. at 512.

. Id.

. State v. Patterson, 11-158 (La.App. 5 Cir. 11/29/11), 78 So.3d 855, 859.

. La. R.S. 14:10(1).

. State v. Joseph, 09-400 (La.App. 5 Cir. 12/29/09), 30 So.3d 157, 165.

. Id.

. The amount of restitution will be addressed in defendant’s third assignment of error, infra.

. 09-2723 (La.1/19/11), 55 So.3d 775, 776.

. The unauthorized use of a movable is "the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently." La. R.S. 14:68.

.Greene, supra

. Id.

. Id.

. Greene, 55 So.3d at 776-77.

. Greene, at 777.

. Id.

. Id. at 777.

. Id. at 775-76.

. Greene, 55 So.3d at 775.

. Id. at 779-80.

. 10-0812 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 802.

. Id. at 803.

. Id.

. Id.

. Id.

. Id. at 802.

. Id. at 805-06.

. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039 (citation omitted).

. State v. Lirette, 11-1167 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763.

. Id.

. See U.R.C.A. 2-12.4; State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 720, writ denied, 12-2024 (La.1/25/13), 105 So.3d 713.

. State v. Kinchen, 342 So.2d 174 (La.1977).

. State v. Denney, 352 So.2d 204, 205 (La.1977).

. State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997).

. Furthermore, Mr. Duos testified as a fact witness to the time and complexities involved in the project. He explained that the building had to be engineered to withstand severe weather conditions because of its location, which required six months. Further, weather conditions and material procurement caused substantial delays.

. La. C.E. art. 802; State v. Balsar, 625 So.2d 664 (La.App. 5 Cir. 1993), writ denied, 93-2799 (La.1/13/94), 631 So.2d 1164.

. State v. Besse, 11-230 (La.App. 5 Cir. 12/28/11), 83 So.3d 257, 265, writ denied, 12-0292 (La.5/25/12), 90 So.3d 409.

. It is well-settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.

. La. R.S. 14:27(D) was amended by Acts 2010, No. 531, § 1 and, more recently, Acts 2013, No. 240, § 1.

. A sentence committing a prisoner to the Department of Corrections is necessarily at hard labor. State v. Wilson, 11-40 (La.App. 5 Cir. 10/25/11), 77 So.3d 400, 405.

. See, State v. Maride, 08-678 (La.App. 3 Cir. 12/10/08), 998 So.2d 909, 911.

. Further, because we are vacating defendant's sentence, we pretermit discussion of defendant’s assignment of error regarding restitution.

. See La.C:Cr.P. arts. 881.4(A).